## Duncan M'Arthur, Plaintiff in Error v. Wesley S. Porter, Defendant in Error.

In an ejectment for a tract of land, the declaration described the same by specific metes and bounds. The jury found a verdict for the plaintiff, stating the defendant to be guilty of the trespass in the declaration mentioned, and "that the plaintiff do recover of the defendant the land described as follows;" describing the same, and referring to a diagram and report of a survey of the land in controversy, which was in evidence. This verdict was for but a part of the land claimed in the plaintiff's declaration. The circuit court, on motion of the plaintiff's counsel, instructed the jury to find a general verdict, saying that the plaintiff could take possession at his peril; and the jury found according to the instructions of the court. Held, that the jury were right in their original verdict; and the instruction of the court, that they should find a general verdict, the plaintiff having established a title only to part of the land, was erroneous.

The real question before the court is, whether the defendant, upon proof of a title to part of the premises described in the declaration of ejectment, is by law entitled to a general verdict for the whole of the premises sued for. That the action of ejectment is a fictitious action, and is moulded by courts to subserve the purposes of justice in a manner peculiar to itself, is admitted; but the professed object is to try the titles of the parties, and the jury are bound to pass upon those titles, as they are established by the evidence before them. They therefore do no more than their duty when they find a verdict for the plaintiff according to the extent and limits of his title as it is proved by the evidence. It is equally their right so to do, since it is comprehended in the issue submitted to their decision. If, therefore, they find by the verdict according to the truth of the case that the plaintiff has title to part only of the premises in the declaration, and describe it by metes and bounds, and that so far the defendant is guilty; and as to the residue, find the issue for the defendants; such a verdict, in point of law, seems to be unexceptionable; and if so, the judgment following the verdict ought to conform to it: and if it should be a general judgment for the whole premises demanded in the declaration, it would be erroneous. Such, upon principle, and the analogies of the common law, would be the result, and the authorities clearly establish the doctrine; and it is confirmed as a matter of practice by the best text writers on the subject.

ERROR to the circuit court of the United States for the district of Ohio.

The case agreed by the counsel for the plaintiffs in error and for the defendants in this court, was as follows:.

"This was an action of ejectment which came up on a writ of error to the circuit court of the United States for the district of Ohio. One of the questions in dispute on the trial of the cause below, was the boundary line between the lands of the plaintiff and defendant. Surveys had been made of the pre-

[M'Arthur v. Porter.]

mises in dispute according to the pretensions of each party. These surveys, with the explanatory depositions taken on the ground, were placed on file and used in evidence on the trial. The jury, instead of a verdict according to the claim of either party, found an intermediate line.    Their verdict was in these words, viz.

'We the jury, do find the defendant guilty of the trespass in the plaintiff's declaration mentioned, and do assess the plaintiff's damages to one cent; and that the plaintiff do recover of the defendant the land described as follows, viz. Beginning at the stone planted in Spencer's orchard, designated on Looker's Map (referring to the survey given in evidence), by the letter B., thence running in a north-westerly direction to a point in Dock's line, one hundred and twenty-four poles eastwardly on Dock's line, from the point marked D. on Looker's Map, a hickory and dog wood; thence westwardly with Dock's line one hundred and twenty-four poles, to the hickory and dog wood aforesaid; thence running in a south-westwardly direction with Taliaferro's line to the place of beginning."

" By reference to Looker's map or survey on file, the boundary here marked out by the jury was capable of being reduced to certainty.    The counsel for the plaintiff below objected against the verdict being recorded, and moved the court to instruct the jury to find a general verdict of guilty for the plaintiff.    The court so instructed the jury, saying " the plaintiff would take possession at his peril."    The jury accordingly found a general verdict for plaintiff.    To this instruction and opinion of the court the defendant excepted, and brought this writ of error to reverse the judgment."

The case was argued by Mr Vinton and Mr Doddridge, for the plaintiff in error; and by Mr Ewing, for the defendant.

Mr Vinton, for the plaintiff.

The plaintiff below having title, in the opinion of the jury, to a part of the land claimed by him, it is admitted they had a right, if they chose, to find in his favour a general verdict of guilty.    And in that case he would have taken possession at his peril of more than he was actually entitled to possess.    But the jury, instead of a general verdict, thought proper to find a verdict *for so much only* as the plaintiff had title to.

[M'Arthur v. Porter.]

Had they a right so to find? and if they had, is it not plain the court had no power to deny its exercise?

Where a verdict is rendered 'for part only of the premises demanded, the part found must be described with certainty: but numerous authorities show that the jury may find a part. Gilbert's Law of Ejectment, 200; Pemble v. Stearne, Raymond's Rep. 165; 1 Institute, 227; Cro. Jac. 113; Siderfin, 232; Cro. Jac. 631; 6 Munford, 25; 1 Mun. 162; 17 Serg. and Rawle, 431; 16 Serg. and Rawle, 245; 17 Serg. and Rawle, 393.

Gilbert, in his Law of Ejectment (page 61), says, "if an ejectment is brought for an *acre* of land, by metes and bounds, and the jury find *half an acre*, without specifying metes and bounds, the verdict is bad; because the sheriff cannot deliver possession." The authorities cited above clearly establish the right of the jury to find a *part* of the premises claimed. It is, emphatically, the duty of the jury to find facts: but by the interposition of the court, in this case, they were restrained, and that office was virtually taken out of their hands.

A leading object of judicial investigation is to reduce disputed and uncertain facts to certainty. But in a question of disputed boundary, it is obvious that a general verdict, without describing the dividing line, or other specification, leaves the parties precisely where they began, and establishes nothing. And if in such a case the plaintiff has a right to demand at the hands of the jury a general verdict, it is clearly not practicable to try a question of boundary by the action of ejectment. A position which, it is presumed, no one will attempt to maintain.

The court, in their instruction to the jury, appear to have fallen into an error in the application of the rule of law to be met with in the books, "that the plaintiff will take possession at his peril." On examination it will be found it is used for a different purpose than that to which it is to be applied in this case. It had its origin in this way.

Anciently, in the action of ejectment, great particularity of description in the *declaration* was required. See Cottingham v. King, 1 Burr. 629. Many judgments were reversed for want of a specific description in the declaration of the premises demanded. But when the action underwent the modifications.

[M'Arthur v. Porter.]

that placed it on its present footing, it was held that a general description of the premises was sufficient. But to prevent the plaintiff from taking advantage of the uncertainty of his declaration, by going into possession of more land than he was entitled to; the doctrine was established, " that he took possession at his peril of more than he had actually recovered."

In all the cases where the courts have holden this language, it will be found that exception had been taken to the sufficiency of the description of the premises in the declaration, after a general verdict. The above cited case of Cottingham v. King is a leading case in point. This principle, therefore, is resorted to, to heal or cure the uncertainty of the declaration, and is not applicable to the verdict. If a verdict is uncertain, the judgment is not rendered upon it and the rule applied to help out the verdict; but the verdict is set aside, or judgment reversed, and a venire de novo awarded. Clay v. White, 1 Mun. 162; Gregory v. Jackson, 6 Mun. 25; Martin v. Martin, 17 Serg. and Rawle, 431; 16 Serg. and Rawle, 245: and see also the extract above from Gilbert's Ejectment. In the case of Gregory v. Jackson, which was an ejectment for one thousand acres of land, and a verdict for four hundred, part of the premises, without designating the boundaries—error was brought after judgment,—the doctrine now contended for, was strongly insisted upon in argument, and overruled:—the judgment was reversed and a venire awarded. There are many instances to be found of verdicts similar to that tendered by the jury in this case. The verdict in the case of Green v. Watrous, above cited, is of that description.

In the case of Hopkins v. Myers, 1 Constitutional Court's Rep. 56 (South Carolina), the similitude of the verdict, even in its form, to the one in the present case, is very striking.

The verdict in that case was sustained, and is in these words, viz, "We find for the plaintiff, with one dollar damages. We also find that the old hedge row beginning at the river, and a line running along the same to its termination; and a line to be drawn from thence, so that it will intersect the course of an old line, surveyed by A. B. Shark in the year 1813, in the centre of the gut, next to the river, and thence along said line until its intersection with the tract of land said to belong to Railford, is the dividing line between the parties."

[M'Arthur v. Porter.]

The practice, as stated by Adams in his Treatise on the Action of Ejectment, and relied upon by the defendant in error, will not sanction his interference with the verdict. He says (page 297), "if plaintiff obtain a verdict for the whole premises demanded, the entry of the judgment is, that he recover *his term* in the premises aforesaid, or that he recover *possession* of his term aforesaid. And this form is also used where a moiety or other part of the premises is recovered; as for example, when the plaintiff declares for forty acres in A. and recovers only twenty. And it is at the lessor's peril, that he take out *execution* for no more than he has recovered title to."

This authority does not show that, in the example put of a verdict for twenty acres, such finding of the jury may be disregarded or set aside, and a general verdict directed to be found in its stead; but it proves that upon such a verdict the plaintiff may take a judgment to recover his term in the premises; and since he is restrained from taking out execution for more than was found by the verdict, it is quite immaterial whether the judgment, in its form, is general or special. The verdict in either case is the guide to the sheriff to direct him how to deliver possession, Gilbert's Evidence, 109; Conner v. West, 5 Burr. 2673; Watrous v. Green, 17 Serg. and Rawle, 393; Gilbert's Ejectment, 61; Cro. Jac. 631.

If, in the present case, the plaintiff below had permitted the verdict tendered by the jury to be recorded, and had taken a judgment for his term generally, it would have been liable to no exception. The defendant would have had no cause of complaint, since execution could issue for the *part only* found by the jury and described in their verdict.

But now he has cause to complain, since there is no restriction upon the plaintiff in taking out execution for, and going into possession of all he ever demanded.

Mr Ewing, for the defendant in error, contended, that it was the duty of the jury to find a general verdict: unless with the consent of the parties a special verdict could not be given. The plaintiff in an ejectment who recovers, takes possession under the direction of the court, and this he does at his peril. A reference to the notes of the judges who presided at the trial

will show the extent of the recovery, and regulate the proceedings of the party.

The only question in the case is, whether the judgment entered is erroneous, or whether a general judgment should have been entered on the finding of the jury.    Cited Adams on Ejectment, 297; 2 Bibb's Reports, 236.

Mr Doddridge, in reply, argued, that there was a material difference between an action of ejectment to try title, and that in which the whole question was one of boundary.    The case cited by the counsel for the defendant in error, from Bibb's Reports, was of the former character, and was therefore not applicable to the question before the court.    That case is also at variance with all the cases referred to in the opening argument for the plaintiff in error.    The distinction is well known in England, and it is one which must necessarily arise under the Virginia land system.    This system involves, in most cases, questions of boundary.

The action of ejectment is a creation of courts, and is to be moulded to meet the justice of the case.    The practice under it in Virginia, is different from that of England.

The order of survey is a material proceeding in Virginia in the action of ejectment; and it is made an order in the cause. It is analogous to a view in England; and the survey so made becomes a part of the issue, presenting the very question which is to be decided by the jury.    The witnesses are called by the surveyor before him, and he locates the bounds of the land.

The order of survey and return becomes a part of the record; and the verdict of the jury is usually entered on the back of the survey, for the express purpose of showing what has been recovered.

Mr Justice Story delivered the opinion of the Court.

This is a writ of error to the circuit court for the district of Ohio.    The original action was an ejectment brought by the defendant in error against the plaintiff in error, and the declaration (which contains several counts) describes the land demanded by specific metes and bounds.    At the trial the jury found a verdict in the following terms.    " We, the jury, find the defendant guilty of the trespass in the plaintiff's declaration

mentioned, and do assess the plaintiff's damages to one cent, and that the plaintiff do recover of the defendant the land described as follows, viz. beginning at the stone planted in Spencer's orchard designated on Looker's Map (referring to the diagram and report of the survey in court) by the letter B.; thence running in a north-westerly direction to a point in Dock's line, one hundred and twenty-four poles; eastwardly on Dock's line from the point marked D. on Looker's Map, a hickory and dog wood, thence westwardly with Dock's line one hundred and twenty-four poles, to the hickory and dog wood aforesaid; thence running in a south-westerly direction to Taliaferro's line to the place of beginning." The counsel for the plaintiff then moved the court to instruct the jury to find a general verdict; and thereupon the court did instruct the jury to find a general verdict, saying that the plaintiff would take possession at his peril; which general verdict was found by the jury accordingly: and to this instruction the defendant excepted. Other exceptions were taken in the progress of the trial, but they have been abandoned at the argument; and the only question presented for our consideration is upon the instruction already mentioned.

From the survey ordered by the court, as well as from the other proceedings and evidence in the cause, it abundantly appears, that the case was one of conflicting titles, and the controversy was principally as to boundaries. The verdict of the jury, as originally found, was for part only of the land sued for in the ejectment; fixing upon an intermediate line of boundary, different from that asserted by either party. It was, therefore, equivalent to a verdict finding a part of the tract of land sued for in favour of the plaintiff, and the residue in favour of the defendant. In other words, that the defendant was guilty of the ejectment as to a part, and not guilty as to the residue of the land described in the declaration.

The real question, then, before the court is, whether the plaintiff, upon the proof of a title to a part of the premises sued for in the ejectment, is by law entitled to a general verdict for the whole of the premises sued for. That the action of ejectment is a fictitious action, and is moulded by courts to subserve the purposes of justice in a manner peculiar to itself, is admitted, but its professed object is to try the titles of the parties·

[M'Arthur v. Porter.]

and the jury are bound to pass upon those titles, as they are established by the evidence before them.   They, therefore, do no more than their duty when they find a, verdict for the plaintiff, according to the extent and limits of his title, as it is proved by the evidence.   It is equally their right so to do, since it is comprehended in the issue submitted to their decision.   If, therefore, they find by their verdict according to the truth of the case, that the plaintiff has title to part only of the premises in the declaration, and describe it by metes and bounds, and that so ar the defendant is guilty; and as to the residue, find the issue for the defendant; such a verdict, in point of law, would seem to be unexceptionable; and if so, the judgment following that verdict ought to conform to it; and if it should be a general judgment for the whole premises demanded in the declaration, it would be erroneous.   Such, upon principle, and the analogies of the common law, would be the just result; and the authorities clearly establish the doctrine, and it is confirmed as a matter of practice by the best text writers on the subject.   Adams on Ejectment, 294.   Runnington on Ejectment, 432.   Bac. Abridg. Ejectment, F. G. Thus in Mason v. Fox, Cro. Jac. 631, where in an ejectment the jury found the defendant guilty as to part of the premises in the declaration, and not guilty as to the residue; all the judges were of opinion that the judgment ought to conform to the verdict, for it was consequent upon the verdict; but that an entry of a general or variant judgment was not a misprision of the clerk, and amendable even after error brought.   In Denn d. Burgess v. Purvis, 1 Burr. 326, the plaintiff sued for a moiety of a certain parcel of land, and had a verdict for one third part of the premises; and the question was, whether in such a case the plaintiff could recover for a less undivided part than he sued for.   The court held that she could, and that she was entitled to a judgment for the one third.   Lord Mansfield on that occasion said, the rule undoubtedly is, that the plaintiff must recover according to his title.   Here she demanded half, and she appears entitled to a third, and so much she ought to recover; so, if you demand forty acres, you may certainly recover twenty acres; every day's experience proves this.   And, he added, that the case of Abbott v. Skinner, 1 Sid. Rep. 229, was directly in point.   In 2 Roll. Abridg. tit. Trial, p. 704,

[M'Arthur v. Porter.]

pl. 22, there is a case where an ejectment was brought of a messuage, and it appeared in evidence and was so found by the verdict that only a small part of the messuage was built by incroachment on the lessor's land, not the residue. And the plaintiff had judgment for the parcel accordingly. Taylor v. Wilbore, Cro. Eliz. 768. These authorities (and the American authorities cited at the bar are to the same effect) demonstrate that the plaintiff is entitled to recover only according to his title; and that if he shows a title to part only, he is entitled to have a verdict and judgment for that part, and no more. If this be the true state of the law, then the jury were right in their original verdict; and the instruction of the court, that they should find a general verdict (the plaintiff having established a title to only a part of the land) was erroneous.

But it has been argued, that such a general verdict, under such circumstances, is a matter of mere practice, and involves no inconvenience or repugnancy to the general principles of law, because the plaintiff must still at his peril take possession under his executor upon a general judgment on such verdict, according to his title. That the whole proceedings in ejectment are founded in fictions, and the court will, in a summary manner, restrain the plaintiff if he takes possession for more than his title, so that no injustice can be done to the defendant. And certain authorities have been relied upon in support of these suggestions. But in what manner can the court, in a case circumstanced like the present, interfere with the plaintiff in taking possession. If the special finding of the jury in the case of interfering titles on a question of boundary, which may; and indeed usually does involve a comparison of the conflicting testimony of witnesses and other parol evidence, is to be set aside and disregarded, there is nothing upon the record to guide the plaintiff in regard to the extent of his title in taking possession; and he must be at liberty to take possession according to his own view of the extent of his title: nor can the court have, in such a case, any certain means to interfere, upon a summary application to redress any supposed excess of the plaintiff; for that would be in matters of fact to usurp the functions of a jury, and to re-try the cause upon its facts and merits, without their assistance. It might be different in a case where the plaintiff's title, as he proved it at the trial, was

[M'Arthur v. Potter.]

upon his own showing, less than the lands of which he had taken possession; for that would involve no examination or decision upon conflicting matters of fact; and after all, what could this be, but an attempt, indirectly, to do that justice between the parties, which the original verdict sought to do directly, and in a manner entirely conformable to law?

As to the authorities relied on to sustain the practice of entering a general verdict, they do not in our opinion justify the doctrine for which they are cited. The language cited from Adams on Ejectment (p. 297) has been misunderstood. It does not mean that where the plaintiff obtains a verdict for a part of the premises only, he is entitled to a general judgment for the whole premises sued for; for that would be inconsistent with what the author has said in a preceding page (p. 294);(a) but only that the same form of entering the judgment for the parcel recovered is adopted as in cases where the whole is recovered; as for example, if the plaintiff declares for forty acres in it, and he recovers only twenty acres, his judgment must be for the twenty acres; and it is at his peril that he takes out execution for no more than he has proved title to, since otherwise his execution would be bad, as not conforming to the judgment.(b)   The case of Cottingham v. King, 1 Burr. 621, was the case of a writ of error from Ireland, and the only question was whether the declaration, which was for five thousand messuages, five thousand cottages, &c. a *quarter* of land, &c. &c. was not void for uncertainty; a general verdict having been given for the plaintiff.   One objection was, that the declaration was too uncertain to enable the sheriff to deliver possession, to which Lord Mansfield replied, that in this fictitious action the plaintiff is to show the sheriff, and is to take possession at his peril of only what he was entitled to. If he takes more than he has recovered and shown title to, the court will, in a summary way, set it right.   Now it is plain that his lordship was here addressing himself to a case where the declaration was general, and the verdict was general for the whole premises; and not to a case where there was a verdict for a specified parcel only of the premises.   In the case

(a) See also Adams's Eject. App. No. 34, where the form of a judgment for a parcel is given, and a judgment for the defendant for the residue.

(b) See Far. and Denn. 1 Burr. Rep. 362, 366.

[M'Arthur v. Porter.]

put, the judgment would be general, and the execution would conform to it; and therefore if the plaintiff took possession beyond his own title established at the trial, the court might interfere in a summary manner to prevent such a general recovery from working injustice. The same doctrine was afterwards held in Conner v. West, 5 Burr, 2672. But neither of these cases has any tendency to show, that upon proof of title to part of the premises the plaintiff is entitled, as a matter of right, to a general verdict and judgment for the whole premises in the declaration. Such a point was never argued, nor considered by the court.

The case of Knouns v. Lawall, lessee of Grayson, cited from 2 Bibb, 236, approaches nearer to the present—without meaning to express any opinion as to the correctness or incorrectness of the decision in that case, it is sufficient to say, that it is distinguishable from the case now before us. In that case, the court held the special finding of the jury void for uncertainty, and rejected it as surplusage; and then considered the finding of the jury as a general verdict for the plaintiff, upon which he might properly have a general judgment. No such objection occurs against the special finding in the present case, and we may decide it without touching the authority of that decision.

Upon the whole, our opinion is, that the instruction of the circuit court was erroneous. It was not a mere matter of practice, but one involving essential rights of the defendant.

The judgment is therefore reversed, and the cause is to be remanded to the circuit court with directions to award a venire facias de novo.