Ruffin, C. J.
 

 It may seem, at first view, a hardship on the owner of wild land, situate as this is, and perhaps at a distance from him, to lose his title by reason of a possession, of which he, probably, would not, and here, cer« tainly, had not early knowledge. But the law cannot . suppose, that an owner will not look to the condition of his property, at least so far as to discover an intruder
 
 *240
 
 within the period of seven years, and take the necessary steps to assert his own right; and therefore an omission to do so must amount to the
 
 laches,
 
 for which the law deprives him of his entry and vests the title in the possessor. It follows from these observations, that the instructions given to the jury were as favorable to the plaintiff, as they could well be. Indeed, it is not easy to comprehend, what is meant by a clandestine possession of seven years. One may enter clandestinely or by a trick ; but when he is once in and continues there, claiming to hold the land as his own, the possession, it would seem, cannot, in its nature, be secret, but is necessarily visible. The furthest the Court has gone, in laying down a doctrine at all applicable to this quesiion, was in
 
 Green
 
 v.
 
 Harman, 4
 
 Dev. 158; in which case it was mentioned with some hesitation, that, if a defendant run his fence so near the line between him and the lessor of the plaintiff, as to induce the jury to believe that it was a mistake merely, or that the lessor of the plaintiff, though reason ably diligent, might so have thought it and have mistaken the character of the possession, and thought the other party did not intend to usurp a possession of a part of
 
 the
 
 land belonging to him, then such a possession might be considered as permissive and not adverse. But it was put distinctly on the ground, that the defendant had a good title to the land adjoining the plaintiff’s, and that the fence was the enclosure around-it, and that in building it but slight encroachments were made over the line on the land of the plaintiff; and it was expressly said, that, if he had not had a good title to the field adjoining, his entry on the land of the plaintiff would be distinct notice and could not be deceptive. For there is in that last case the possession in fact and nothing to mislead as to its character. Such is precisely the state of the present case. There can be no question of the object of the defendant in taking possession, nor of its character through
 
 *241
 
 out, that it was adverse. It is plain indeed, that he hoped the lessor of the plaintiff would neither see it nor be informed of it, until it should ripen his title. But that can make no.difference ; for, in its nature, the defence of the statute of limitations is a protection against the title, and it has never been held, that the possessor must give notice of his claim, otherwise than by that most effective notice to an owner of ordinary vigilance, namely, the possession itself. As that existed in fact and spoke for itself, so that the lessor of the plaintiff could not have been mistaken, either as to the fact of possession or its character, if he had gone to the place or otherwise had kept due oversight of his land, there is no ground, on which the operation of the statute can be impeded. For, there is no doubt that the possession of the defendant was, from the beginning, such as made him liable to an ejectment; and, if so, that determines the question. No one will question, that be must have been so liable, to the extent of his enclosures from time to time. Then it follows, according to the settled rule in this State, that his possession of those parts was the possession of the whole covered by his patents, as the lessor of the plaintiff had no actual possession within those bounds,
 
 Carson
 
 v.
 
 Burnet,
 
 1 Dev. & Bat. 546 ; which rule is the necessary consequence of our doctrine of color of title, and of the condition of our country in being still mostly in woods. His Honor therefore certainly did not err in leaving this case to the jury as one, in which they might find an adverse possession in the defendants, extending to the whole of the two tracts claimed by him. The Court also holds that the verdict was properly recorded as delivered by the jury, because, first, it was so delivered ; and, secondly, it was the most proper form for it. The jury may indeed give a general verdict, and, it is usual to do so; but where the precise interest of the lessor or lessors of the plaintiff'appears, it is generally proper and most for the
 
 *242
 
 convenience of the parties, that the verdict should be according to it.
 
 Godfrey
 
 v.
 
 Cartwright,
 
 4 Dev. 487.
 
 Love
 
 v.
 
 Welborne,
 
 5 Ire. 344.
 
 Holdfast
 
 v.
 
 Shepard,
 
 9 Ire. 228.
 
 McAstor
 
 v.
 
 Porter,
 
 6 Peters, 205.
 

 It seems proper to notice an objection taken in this Court, that a plaintiff could not appeal from a judgment in his own favor ; as we have no doubt he may. The enquiry to him is of the same nature, whether the error be in not giving him all or a part of what he is entitled
 
 to;
 
 and he has a right to the judgment of this Court, whether he ought not to have had a verdict and judgment for all he claimed instead of the small part he got. Hence it is settled at common law, that a plaintiff may bring a writ of error on his own judgment, and so he may have his appeal under the statute.
 

 Per Curiam.
 

 Judgment affirmed, with costs against the plaintiff in this Court.