SCAIFE v. WESTERN NORTH CAROLINA LAND CO. et al.

(Circuit Court of Appeals, Fourth Circuit. November 15, 1898.)

No. 266.

1. EVIDENCE—BOUNDARY—STATEMENT OF PERSON SINCE DECEASED.
   A declaration of a person since deceased as to a boundary is not admissible, unless it is shown that he was disinterested at the time of making it.

2. SAME—ADMISSIONS—RECORD ON FORMER TRIAL.
   A distinct and formal admission of a fact, signed by an attorney of record on a trial, is competent evidence on a subsequent trial of the same case.

3. ADVERSE POSSESSION—POSSESSION OF PART OF LARGER TRACT—LAW OF NORTH CAROLINA.
   Under the settled law of North Carolina, the continuous, open, notorious, and unequivocal adverse possession of a small part of a tract of land will mature title to the whole tract within the boundaries of the adverse holder's claim.

4. BOUNDARY—PLAT AS EVIDENCE.
   While a plat attached to a grant may be referred to for the purpose of correcting a mistake or resolving an ambiguity in the grant, the grant must control, if it is certain.

5. APPEAL—REVIEW OF INSTRUCTIONS.
   The correctness of a special instruction cannot be considered by an appellate court, where the court gave it as qualified or explained by the general charge, and such charge is not in the record.

6. ADVERSE POSSESSION—POSSESSION OF TENANT.
   Under the law of North Carolina, a tenant who holds continuous, open, notorious, and unequivocal adverse possession of a definite boundary, however small, within a large tract of land, holds possession for his lessor; and his possession inures to the benefit of the lessor, as to the whole of the land covered by the deed under which he claims title.

In Error to the Circuit Court of the United States for the Western District of North Carolina.

J. H. Merrimon and M. Silver, for plaintiff in error.

T. H. Cobb and F. A. Sondley, for defendants in error.

Before SIMONTON, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

BRAWLEY, District Judge.  This was an action to try title to and recover land, in which the plaintiff, Marvin F. Scaife, a citizen of Pennsylvania, sought to recover from the defendants, the Western North Carolina Land Company and Jack Sheehan, certain land originally in the county of Burke, but now in the counties of McDowell and Yancey, in the state of North Carolina.  The trial was had in the circuit court of the United States for the Western district of North Carolina.  The plaintiff sought to establish title under a grant from the state of North Carolina to Robert and William Tate dated May 20, 1795.  The defendant denied that the plaintiff owned the land sued for, and denied that the plaintiff was able to locate any such land as that described in said grant, and showed grants for so much of the land as is claimed by the defendant the Western North Carolina Land Company, made by the state of North Carolina on December 28, 1877, to W. W. Flemming, and a deed from said Flemming therefor to said defendant company dated January 3, 1878.  These grants to W. W. Flemming, when taken together, constituted, by adjoining each other, one continuous body of land; and the land covered by them was conveyed by said deed from Flemming in one body, by a description of outside boundary line running around them as one body.  The defendant introduced evidence tending to locate the land covered by said deed from Flemming, which was, according to the contention of plaintiff, covered by the Tate grant; and the defendant undertook to show an open, continuous, adverse possession of the land covered by said deed from Flemming by the defendant the Western North Carolina Land Company under that deed for more than 11 years prior to the commencement of this action, under known and visible lines and boundaries.  The grants to the Tates covered about 70,000 acres; the grants to Flemming, about 32,000 acres.  The action was brought in accordance with a statute of North Carolina which provides "that an action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims."  The case was tried before the late Judge Seymour and a jury at Asheville in 1896, and it appears from the record in that case that the jury found that the plaintiff had made out his title from the original grantees to himself, and established the boundaries of the land described in the complaint; but inasmuch as the jury found by their verdict that there had been continuous, adverse possession of a part of the land by the defendant company for the period of more than seven years by one Holafield, who held under the defendant company, which had color of title, there was a judgment for the defendant.  The case coming to this court by writ of error, a new trial was granted, for reasons set forth in the

opinion, reported in 25 C. C. A. 461, 80 Fed. 352. Upon the second trial, before Judge Purnell and a jury, the following issue was submitted: "Is the plaintiff the owner and entitled to the possession of the land described in the complaint, or any part thereof?" to which the jury answered, "No;" and upon this verdict a judgment in favor of the defendant was entered August 13, 1897. A motion for new trial having been made and refused, the case is here upon a writ of error. The record contains 21 exceptions. There were practically three questions involved: (1) The validity of the Tate grant; (2) the location of the lands; (3) the claim of adverse possession. The form of the issue submitted to the jury, and its response thereto, do not enable us to determine with precision the ground upon which the verdict rested; and as all of the testimony and all of the charge of the presiding judge are not before us, but only so much as is embraced in the voluminous exceptions, it seems impracticable to state the case intelligibly, and, at the risk of some prolixity and repetition, the exceptions will be considered each in its order.

The first assignment of error relates to the exclusion of the testimony of E. L. Greenlee, who was asked what his father, then deceased, had said about a white-oak corner on the Neely tract. It appears that this tract belonged to the grandfather of the witness, and that his father was one of the heirs of the estate. The general rule of law which renders hearsay evidence inadmissible is so far relaxed as to render declarations of deceased persons respecting boundaries admissible, but a prerequisite to their admissibility is that the person should be disinterested. Such testimony is held to be competent because of the presumption that a man will speak the truth when there is no motive to declare the contrary. A man cannot manufacture evidence for himself or for another, and as it appeared that the party at the time the declaration was made was interested, and as it did not appear that it was made ante litem motam, there was no error in rejecting it. Morgan v. Purnell, 11 N. C. 95; Hedrick v. Gobble, 63 N. C. 49.

The second assignment of error relates to the admission of the testimony of one McCoy, who testified respecting a conversation between the father of the witness and one Stepp, who had been examined as a witness in the case. McCoy's testimony tended to contradict Stepp, and the presiding judge held that it was competent for that purpose; and we are of opinion that there was no error in so holding.

The third assignment of error grew out of exceptions to the testimony of McGeorge, and as the presiding judge, later in the trial, ruled out all of this testimony without objection, this disposes of the exception.

The fourth assignment of error, relating to the refusal of the presiding judge to grant the instructions therein set out, is disposed of by his statement that it was not moved in apt time.

The fifth assignment of error relates to the admission of a bill of exceptions in the former trial signed by counsel for the plaintiff and by the presiding judge, wherein it was admitted that S. H. Flemming was the agent of the defendant company. This paper, which is

stated by the court to be a "record in this cause," was offered by the defendant to prove that the plaintiff had admitted Flemming's agency. Admissions by a party are always competent evidence against him, and there seems to be no reason why a distinct and formal admission signed by an attorney of record upon a former trial, and not withdrawn or modified, should not be competent evidence. We are of opinion that there was no error in admitting this record.

The sixth assignment of error embodies two exceptions. The first relates to the submission to the jury to determine as a question of fact what was the indorsement on the original Tate grant. The presiding judge certifies that this paper was submitted to the jury at the plaintiff's own request, the indorsement being "dim with age." Inasmuch as the defendant had objected to the introduction of this paper on the ground that the entry was not genuine, the plaintiff cannot be heard to object to a compliance with his own request that it should be submitted to the jury; and as the presiding judge afterwards charged the jury that, "if the evidence was believed, plaintiff had made out a prima facie title to 70,400 acres of land somewhere," there is no longer any question as to the validity of the Tate grant. The second exception embraced in this assignment of error is that the presiding judge left it to the jury to say what was meant by the call, "West 3,900 poles, crossing the heads of Crabtree and Toe rivers." We are unable to find from the exception or argument what the plaintiff's contention is as to the meaning of these words, or wherein he has suffered injury by having it submitted to the jury, as it was, "whether it crossed the heads of Crabtree alone, and then goes on and crosses Toe river, or whether it means that it crosses the heads of Crabtree and Toe river." It is no contravention of the general rule that the termini and boundaries of a deed is a matter of law, for the court to submit to the jury a question of doubt arising out of the configuration of the country and the character of the natural objects mentioned; and, no injury to the plaintiff being pointed out, we must hold that there was no error in this instruction.

The seventh assignment of error relates to Holafield's possession, and a proper understanding of the questions involved requires a statement of the nature of such possession. It appears from the testimony that one Byrd made an entry of some lands adjoining a tract owned by Holafield. Under the laws of North Carolina an entry is a conditional contract of purchase from the state, which may, within a period fixed by law, be perfected by payment of the purchase money, and by grant. Holafield, in pursuance of a verbal agreement with Byrd for a lease thereof, cleared about an acre of the land adjoining his own, and extended his fence so as to inclose it; subsequently, by additional clearing, inclosing about $2\frac{1}{2}$ acres. He remained in possession several years, paying no rent, but not disputing Byrd's rights, when an agent of the defendant land company came to his house, and claimed that the land belonged to the defendant company; and as agent therefor he gave Holafield a written paper purporting to be a lease for one year, and in consideration thereof Holafield agreed to prevent any encroachment upon the lands of the company, and to report any such to the agent. This paper,

90 F.—16

signed by S. H. Flemming, agent, dated April 8, 1883, was offered in evidence, and is set out in full in the former opinion. Subsequently one Houck, who succeeded Flemming as agent, came to Holafield's house; authorized him to clear more land, if he wished, and to take such firewood and rail timber as he wanted. In pursuance of such authority, additional land was cleared, and about six acres in all was thus cleared and inclosed. From the date of this paper to the time of trial, Holafield remained in possession and cultivated the land he had cleared and fenced, acknowledged that he held under the defendant company, and so informed his neighbors. He was told by Byrd that he no longer claimed it, and it does not appear that Byrd, whose entry of the land was nothing more than notice of intention to apply to the state for a grant, ever applied for or received a grant. There was some testimony that Holafield himself had made an entry of this land more than once, but the exact time when such entries were made is not fixed. He is an ignorant man, and there is considerable confusion and uncertainty in his testimony on this point. These entries, whenever made, were never perfected; and his testimony is positive that he never claimed against the defendant company, his services in looking after the timber and preventing trespassing being in lieu of rent. Testimony was offered to show that the land thus occupied was embraced within the boundaries of grant No. 915, which was one of the tracts of land covered by the Flemming grants, and conveyed by him to the defendant company. The same land was also within the boundaries of the Tate grant. The seventh exception contains a long excerpt from the judge's charge, and is in these words:

"The plaintiff, the jury being still at the bar, excepted to the part of the foregoing charge where the court said that if Holafield is in possession of 915, such as described in the opinion of the court of appeals,—actual, not constructive, open, well known, etc.,—his possession would inure to the benefit of the defendant, but not otherwise."

The elaborate argument upon this exception does not seem to us pertinent to it, for so much of the charge as is thus excepted to did not state the extent to which the possession of Holafield would avail the defendant company. Whether it would so far inure to its benefit as to mature title to all of the land claimed by it is not charged, as seems to be assumed in the argument.

It is earnestly contended that Holafield was a tenant of Byrd, and not of the defendant company. According to the testimony, Byrd never had title to the land. His entry was notice of intention to apply for a grant, which gave him certain claims of priority of right to a grant; but, whatever may have been his interest in the land, it seems from the testimony that it had been abandoned before the defendant company leased the land to Holafield. Byrd's rights, whatever their character, were from the state; and, as Holafield went in under him, it would follow that when the state granted the land to Flemming, who conveyed it to the defendant company, it succeeded to the title to which Byrd had an inchoate claim, long since abandoned. That Holafield, after learning that Byrd had failed to perfect his entry, and that the land belonged to the defendant com-

pany, should attorn to it, seemed altogether natural and proper, and it is difficult for us to understand how it can be gravely argued that such attornment is a fraud upon Byrd. If there was anything to create the suspicion that there was a collusive concert between Holafield and the defendant company, whereby Byrd was or might have been defrauded, or if there was any proof that Byrd was asserting any claim to the land, or complaining of any fraud or concealment, it would be our duty to give fuller consideration to the argument; but in the absence of any testimony that Byrd's interest in the land was other than of a fleeting and transitory nature, never perfected and long since abandoned, the discussion, admirable in its ingenuity and exhaustive in its learning, is academic, and it does not seem to be required of us to enter into it.

It is further argued that the "adverse possession of Holafield could only extend beyond the quantity of land mentioned and described in the paper writing from Flemming," which was two and one-half acres. This argument takes no account of the fact that, by agreement with the land company, two or three acres in addition to that originally entered under Byrd's lease, and with which it is not claimed that Byrd had any connection, was taken and held under the defendant company. As before stated, the argument upon this point does not seem to be properly cognizable under this exception, for it does not appear in any part of the charge excepted to that the extent to which the possession of Holafield would inure to the benefit of the defendant company was stated; but, inasmuch as the subject has been fully discussed on both sides, it may be as well to state what we conceive to be the law. It is a fundamental principle that the right to hold land, its descent, devise, alienation, and transfer, and the mode of acquiring title, depend upon the law of the state where the land is situate. In this case, therefore, the laws of North Carolina must govern. When it was here before, the judgment of the court below resting upon the verdict as to Holafield's possession, it was the opinion of this court that the trial judge had omitted to instruct the jury as fully as the law required concerning the nature of an adverse possession; and as the facts disclosed in that record raised a question whether the possession of a minute portion of a large body of land was of that open, actual, and notorious character which would put upon inquiry an owner of reasonable diligence and ordinary vigilance, and thus put in motion the statute of limitations against him, it was determined that a new trial should be granted. It is not claimed that there was any failure upon the part of the presiding judge on the last trial to make plain to the jury the nature and kind of adverse possession which sufficed to mature title against the true owner. His charge upon that point was in the very language of this court, which did nothing more than embody what was conceived to be the well-settled law upon the subject, and the clearness and force with which he presented it to the jury is unassailable, and not excepted to.

The controversy is between the plaintiff, claiming under the Tate grant, and the defendant company, claiming under the Flemming grants. The Tate grant being the older, the plaintiff unquestionably

had the superior title.    Although it does not appear in the record that there was any proof of possession, no such proof was necessary; for possession follows the title, and all the presumptions are in favor of the true owner.    He was in constructive possession; that is, he had that possession which the law gives to the owner by virtue of his title only.    The defendant company having color of title under the Flemming grants to a large body of land embraced within the boundaries of the Tate grant, this action was brought, under the statutes cited, against it and its tenant Sheehan for the purpose of settling the question of title; and the defendant undertook to prove actual, adverse occupation of a part of this land for the period which under the statute of North Carolina was sufficient to mature title against the true owner by its tenant Williams, the nature of whose holding does not appear in the record, and by its tenant Holafield, the character of whose possession has been already stated.    That an actual, open, notorious, continuous, uninterrupted, exclusive, and unequivocal adverse possession of a very small part of a large body of land will mature title to the whole tract embraced within the boundaries of the adverse holder's claim seems to be well settled in North Carolina.    Its great chief justice, in Lenoir v. South, 32 N. C. 237, said:

"It may seem at first view a great hardship on the owner of wild land, situate as this is, and perhaps at a distance from him, to lose his title by reason of a possession of which he probably would not, and here certainly had not, early knowledge.   But the law cannot suppose that an owner will not look to the condition of his property, at least so far as to discover an intruder within the period of seven years, and take the necessary steps to assert his own rights; and therefore an omission to do so must amount to the laches for which the law deprives him of his entry, and vests the title in the possessor.   It follows from these observations that the instructions given to the jury were as favorable to the plaintiff as they well could be.   Indeed, it is not easy to comprehend what is meant by a 'clandestine possession of seven years.'   One may enter clandestinely or by a trick; but when he is once in, and continues there, claiming to hold the land as his own, the possession, it would seem, cannot, in its nature, be secret, but is necessarily visible.   There can be no question of the object of the defendant in taking possession, nor of its character throughout,—that it was adverse.   It was plain, indeed, that he hoped the lessor of the plaintiff would neither see it nor be informed of it until it should ripen his title, but that can make no difference; for, in its nature, the defense of the statute of limitations is a protection against the title, and it has never been held that the possessor must give notice of his claim otherwise than by that most effective notice to an owner of ordinary vigilance, namely, the possession itself.   As that existed in fact, and spoke for itself, so that the lessor of the plaintiff could not have been mistaken either as to the fact of the possession or its character, if he had gone to the place, or otherwise had kept due oversight of his land, there is no ground on which the operation of the statute can be impeded; for there is no doubt that the possession of the defendant was from the beginning such as made him liable to an ejectment, and, if so, that determines the question."

It is contended that at the most the claim of adverse possession would be limited to the boundaries of grant No. 915, within which lay Holafield's farm.    Such would be the case had Flemming conveyed to the land company the separate parcels granted to him, and each separate tract had its own specific metes and bounds, for the rule with respect to adverse possession is that possession on one

tract of land does not extend to or mature title in a contiguous tract; but it appears from the deed under which defendant company holds that all of the grants to Flemming were embraced in a single boundary, and they seemed to adjoin each other and form a connected body of land; and the Code of North Carolina (section 1277) makes special provision for including in one common survey several tracts of contiguous and adjoining land, and makes possession of any part of the lands covered by such common survey possession of the whole or every part thereof. The record does not show that any special instruction was asked on this point, nor is there any exception to any part of the charge relating to the separate tracts, and we have not before us any testimony concerning the same; but the embracing of all the separate parcels in one deed under a common boundary would seem to indicate the owner's intention to accomplish the purpose of the statute, and to hold this body of land as an entirety. The consolidation of the grants by Flemming in his deed of conveyance, and the description by a common boundary, show such intention, and there is no countervailing evidence. We are of opinion that there is no error in the charge as set forth in the seventh exception.

The eighth assignment of error is to the refusal of the presiding judge to give the special instruction prayed by the plaintiff, to the effect that there was no sufficient evidence to show Samuel H. Flemming's authority to lease any of the lands for the defendant company. We have already referred to the evidence on that point, and are of opinion that there was no error in submitting the question to the jury. As to so much of the prayer as relates to the lease to Williams, and his attornment under threat of suit, there is no evidence before us in the bill of exceptions regarding the nature of Williams' possession, and it is impossible, therefore, for us to consider it; and for the same reason we are unable to appreciate the effect of the modification of the prayer for instructions which is the basis of the ninth assignment of error.

The tenth assignment of error is to the granting of the instruction prayed by the defendant, which was "that the plat attached to the grant to the Tates cannot control the calls of the grant itself, and, wherever they differ from the calls of the grant, the grant must control, in determining the location of the land granted in the grant," which the court gave, with the remark, "The court gives you that, with the charge already given you." In his general charge the court had instructed the jury "that, in resolving a doubt or ambiguity in a deed or grant, you have the right to call to your assistance the plat made by Henry at the time the grant was issued." That a plat may be used to correct a mistake in a grant is well settled by the cases cited by the plaintiff in error, and so the presiding judge, in effect, charged; but no case has been cited to the effect that the plat may control the grant. The case of Hurley v. Morgan, 18 N. C. 432, is direct authority to the converse. It is the grant that passes the title, and it must control, if it is certain. It is only when it is ambiguous that the plat usually annexed to it may be referred to, to resolve the ambiguity or to correct the mis-

take.    Taken in connection with the general charge, there is no error in the instruction.

The eleventh, twelfth, and thirteenth assignments of error relate to the instructions to the jury as to the rules which should govern them in the location of the grants.    As general propositions of law, they seem to be well supported by the cases cited by defendant's counsel; and the plaintiff has not pointed out, and we cannot see, how, in any aspect of the case, he has suffered injury therefrom.

The fourteenth assignment of error is that the court erred in giving this instruction:

"Where the title deeds of two rival claimants of land lap upon each other, and the claimant under the junior title, or his agents or lessees, is in possession of a part of the lap, and the other claimant is not in the possession of any of the lap, the possession of the entire lap is in the claimant under the junior title.    It makes no difference how small the possession may be in the junior grantee or his tenant; if it has continued for seven years prior to the commencement of this suit, such possession has vested the title to the entire lap in him who originally had the junior title."

The said judge read this special instruction to the jury, and remarked to the jury:

"The court gives you that as modified by the charge.    It is laid down in the decision of the supreme court, and almost in the very words."

In so far as the exception goes to the special instruction, it seems to be answered by the case of McLean v. Smith, 106 N. C. 172, 11 S. E. 184, but it appears that the instruction was given "as modified by the charge."    The charge is not before us, and we cannot know what the modification was.    If there were other persons in possession of any part of the lap, there should have been a modification of the charge to meet that state of facts.    The record contains no evidence on that point.    We cannot assume that there was such testimony, and that the presiding judge failed to modify his charge to meet that exigency.

The fifteenth assignment of error is to the giving of the following special instruction:

"If the jury shall find that the defendant the Western North Carolina Land Company put the witness Bynam Holafield in possession, for it or under it, of any part of the land claimed by it, and being part of the land purporting to be conveyed by W. W. Flemming to it by the deed from said Flemming offered in evidence by it, and afterwards permitted said Holafield to continue so to occupy the said part of said land for it or under it, and that under such putting in possession and permission said Holafield occupied said part of said land for as much as seven years at any time or in any period before the commencement of this suit, in November, 1894, there being no evidence that during any part of that time the plaintiff was in possession of any part of the land so claimed by said defendant, and the jury shall further find that said part of said land is also a part of the land claimed by the plaintiff, and a part of the lap covered by both the title of the said defendant and the title of the said plaintiff, then in such case the possession of said part of said lands by said Holafield would ripen the title of the said defendant to the entire lap; and the jury should in that case answer the first issue, 'No.'"

The said judge read said special instruction to the jury, and remarked to the jury:

"The court gives you that, with the explanation already given you as to what 'adverse possession under color of title' means."

We are of opinion that this special instruction would be obnoxious to just criticism, if it stood alone; but the presiding judge says that it was allowed, with the "explanation already given," etc. Without having the full charge before us, we cannot say that the explanation was insufficient. In so far as we can judge of it from the excerpts which appear, we think it fairly to be presumed that his explanation of the nature of adverse possession in connection with the Holafield land was sufficiently full and complete to leave the jury in no doubt as to the character of the adverse possession which was necessary to mature title.

The sixteenth assignment of error is to the giving of the following special instruction:

"If the plaintiff would recover the land sued for in this action, he must not only show title in himself to the land claimed by him, but he must also show with certainty that the land which he claims is the land covered by his title papers. To do this last, he must show to the satisfaction of the jury, by a preponderance of the evidence, the exact location of the land described in his title papers, so as to enable the jury to determine in their verdict the precise position of its boundaries. If, therefore, he has left the matter of the exact places of such boundaries in doubt, so that the evidence does not enable the jury to locate them and to determine their exact position with certainty, the jury should answer the first issue in the negative. If, upon the evidence, the minds of the jury are left evenly balanced between two or more attempted or possible locations of such boundaries, it is their duty to answer the first issue in the negative."

The judge read said special prayer to the jury, adding the words "with reasonable certainty" after the words "but he must allow," and adding the word "reasonable" after the words "position with" and striking out the words "precise and exact," and remarked to the jury:

"The words 'exact and precise' have no business there. The last paragraph of that instruction is refused, but the others given. Plaintiff must locate the land with reasonable certainty. The law does not require the exact location, nor the precise position. The substance of the instruction the court gives you as it has already done."

The exception is to the giving of a "special instruction" which the record shows was not given. The instruction was materially modified, and it does not appear that any exception was taken to it as it was given. There is some criticism in the argument of the last paragraph, which the presiding judge refused to give. Counsel say that "there are no paragraphs in the instruction, and it is difficult to see what it means." We have no such difficulty. If it had been given as prayed, it would not have been error; for, the plaintiff being the actor, the burden was upon him to establish with reasonable certainty the location of his land, and, if he could not do so by preponderance of evidence, the verdict would have to be against him.

The seventeenth assignment of error relates to an instruction which is supported by Harry v. Graham, 18 N. C. 76; Ring v. King, 20 N. C. 164.

The eighteenth and nineteenth assignments of error relate to the possession of Samuel Williams of a part of the land covered by the deed from Flemming to the defendant company. No testi-

mony concerning the nature of Williams' possession is in the record, but inasmuch as it appears that the presiding judge had in his general charge fully instructed the jury that the adverse possession required to mature title must be actual and exclusive, and had more than once explained the nature of adverse possession, citing the opinion of this court upon that subject, and in giving the special instruction had added that it was given with the modification included in his general charge, it seems to us that the exceptions are not well taken.

The twentieth and twenty-first assignments of error relate to instructions concerning the effect of adverse occupancy by a tenant. These instructions, modified as they were, are in accord with the principles which we have hereinbefore held to govern cases of this nature. It would swell this opinion to undue proportions to cite the numerous cases decided in North Carolina since Lenoir v. South in which the principles there laid down are approved. McLean v. Smith, 106 N. C. 172, 11 S. E. 184; Brown v. Brown, 106 N. C. 460, 11 S. E. 647; Hamilton v. Ickard, 114 N. C. 537, 19 S. E. 607; Shaffer v. Gaynor, 117 N. C. 21, 23 S. E. 154,—are among them; and it may be considered as settled in that state that a tenant who holds continuous, open, notorious, and unequivocal adverse possession of a definite boundary, however small, in a large tract of land, holds possession for his lessor, and his possession inures to the benefit of the lessor as to the whole of the land covered by the deed under which he claims title. This action is predicated upon the assumption that such is the law; for in joining Sheehan, a tenant of the defendant company, with the defendant land company, the plaintiff claimed the right, because of Sheehan's possession, to a judgment for the entire body of land to which he claimed title under the Tate grant. He has had two trials, and in both the verdict has gone against him. When the entire testimony and the entire charge are not before the appellate tribunal, there is always a presumption that the judge below gave the instructions properly applicable to the facts as disclosed by the evidence; and although certain portions of the charge, apart from the context, may appear obnoxious to criticism, yet, viewing it as a whole in so far as we can form an opinion of it from the excerpts presented in the record, our conclusion is that the case was fairly presented to the jury, and the judgment of the circuit court is accordingly affirmed.