COLUMBIA MFG. CO. v. HASTINGS et al.

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

No. 826.

1. REVIEW ON APPEAL—VARIANCE—WAIVER OF OBJECTION.

The objection of variance must be made when the evidence is offered, and the reason of the variance pointed out, so that, if it appears that a variance would occur, the plaintiff may amend his declaration or bill of particulars; otherwise the objection is waived and cannot be raised in the appellate court.

2. CONTRACT—RIGHT OF RESCISSION—WAIVER.

The fact that an agent through whom orders were sent to defendant for its acceptance was interested in a firm for which he sent in an order, if unknown to defendant at the time it accepted such order, might entitle it to rescind the contract within a reasonable time after obtaining knowledge of the connection; but, where it afterwards filled a portion of the order without any objection, it waived the right to object on that ground, and the contract became binding upon it.

3. APPEAL—REVIEW—REFUSAL OF INSTRUCTIONS ASKED.

Where the record in the appellate court fails to show that the entire charge given is set out in the bill of exceptions, the presumption is that the court gave, in substance, all proper instructions, and that the refusal to give special instructions asked was without prejudice.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

John H. Hamline, for plaintiff in error.

Fred W. Bentley, for defendants in error.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. This was an action brought by the defendants in error against the plaintiff in error, engaged in the manufacture of steel tubing for the making of handle bars for bicycles and other purposes, to recover damages for the nonfulfillment of certain contracts for the manufacture, sale, and delivery of steel tubing for the construction of handle bars. There were three counts in the declaration; the first and third counts founded upon one contract or accepted order, dated December 10, 1898, for 100,000 pieces of tubing for the construction of 50,000 handle bars. The second count was upon a distinct cause of action, founded upon a second contract or accepted order, of December 28, 1898, for a similar amount of tubing. The defendants in error (plaintiffs below) filed a bill of particulars, claiming damages for breach of the contracts: First. Damages by reason of inability to operate plaintiffs' factory by reason of shortage of tubing, arising from defendant's failure to deliver it. Second. Damages for inability to fill orders, for a like reason. These two grounds for damages were not pressed. Third. Damages on account of handle bars returned by customers, and rendered worthless in the market, because made of an imperfect gauge. Fourth. Because on account of brittle and unsuitable tubing,

¶ 1. See Pleading, vol. 39, Cent. Dig. § 1438.

which broke in bending after being partly manufactured into bars. Fifth. Difference between contract price and market value of tubing at the time of the failure to deliver.

The defendant below pleaded that it did not undertake or promise in manner and form as the plaintiffs had complained, and on the trial, after a jury had been impaneled, filed an additional plea, alleging that the clause in the contract giving the plaintiffs the option of ordering tubing for 50,000 additional handle bars, specifying deliveries 30 days prior to the time shipment was required, was contrary to the statute of the state of Illinois made against gambling contracts. When the bill of exceptions is looked into, it is seen that these pleas are equally futile and contrary to the truth of the case as presented by the evidence, the charge of the court, and the finding of the jury. There is no denial anywhere, by the defendant below— either in the pleadings or the testimony—of the alleged failure to deliver the goods agreed to be delivered. What the reason was, does not appear, except by conjecture. After the contracts were made, and a part of the goods delivered, the price of steel rose very materially; and this was one element, no doubt, of the damages found by the jury for nonfulfillment of the contracts. The undisputed evidence of plaintiffs shows that the amount of tubing called for by the two contracts was 276,875 lineal feet, of which but 115,-363 feet and 11 inches were delivered, leaving the defendant in default for the nondelivery of 161,512 feet. The evidence shows that the contract price was 3½ cents per foot, and that during the season and during the life of the contract the market price rose to 4½ cents. There were other items of damage shown by the plaintiffs' evidence, equally obvious. The contracts required the tubing to be made of steel of a certain chemical analysis, and not too high in carbon, so as to make it too brittle and unsuitable for bending into handle bars. The evidence of plaintiffs tended to show that 10 per cent. of the tubing delivered was too brittle to allow of bending, and was worthless for handle bars. The contracts provided, also, that the tubing should be of uniform gauge, suitable for handle bars, while the testimony showed that, in some 5,000 of the bars shipped, the gauge was defective, so that the stems would not fit into the posts of standard bicycles, and so could not be used, but had to be sold at department stores at a loss of from 10 to 15 cents on a handle bar; the damage on this account amounting to $625, at 12½ cents a bar. Besides these items of damage was one for handle bars sold and returned as defective. These items of damage, amounting, according to plaintiff's testimony, to $3,149.58, were undisputed by any testimony offered by defendant. The jury assessed the plaintiff's damages at $2,250. The defendant denied the execution of the contracts sued upon in its plea, but no evidence was offered by it on that subject. The contracts were in writing, and are uncontradicted by the evidence, as is also the damage for nonfulfillment.

By its special plea, filed after the trial had begun, the defendant claimed that the contracts were gambling contracts, on account of the option given the plaintiffs to order an additional 50,000 of bars. But when the testimony contained in the bill of exceptions is looked

into, it is seen how slight foundation there is for such a plea, which was mainly abandoned on the hearing in this court. The order of the plaintiffs on defendant for handle bars of December 10th was as follows:

"You may enter our order for fifty thousand pieces of ⅞x18 g. handle bar stock; one half to be 27″ long and one-half to be 28½″ long. The tubing to be of good uniform quality, and smooth surface, suitable for the making of handle bars and for special polishing and plating. Also fifty thousand pieces of ⅞x18, g. 6″ long, suitable for handle bar stems."

Then follow specifications for shipment on different days, from December 19th to January 25th, followed by a further provision that specifications for the balance of the 50,000 pieces to be given defendant on or before January 15, 1899; the extra 50,000 pieces to be specified for and taken during the season of 1899, or prior to June 15, 1899. Then follows the provision for an option on further orders, as follows:

"We are to have the privilege of an option from you for not to exceed 50,000 additional pieces of handle bar stock of above described quality by exercising said option, and specifying deliveries thirty days prior to the time of shipments as required. Price, three and one-half cents (3½ cts) pr. foot. Terms, net spot cash F. O. B., Niles, Ohio. Shipments to be made for us to your Chicago representatives, F. A. Hastings & Co. Said stock to be delivered by them to us C. O. D."

The evidence is uncontradicted that this optional clause was afterwards turned into a binding contract between the parties for the manufacture and delivery of the additional 50,000 bars by the defendant, and their acceptance by the plaintiffs, an order in writing for the same being made by the one party and accepted by the other.

Entering upon the trial of the cause with such pleas as these, a general denial of the making of the agreements, against the obvious truth, and the claim that the agreement, if made at all, was a gambling contract, and with the evidence and merits of the case against it, it is no great wonder that the defendant should cling to every technical objection to defeat the plaintiff's case; and accordingly, upon reading the record and bill of exceptions, it is clear enough that, except that it was the province of the jury to assess the plaintiff's damages (and the trial amounted to little more than such assessment), the court might have ordered a verdict in the plaintiff's favor. The finding of the jury is conclusive, unless the plaintiff in error has been able to make good some one of the several exceptions and assignments of error. These assignments we have carefully and separately considered, and we find no substantial error in the record that can avail to affect the verdict of the jury, or the judgment of the court rendered thereon.

One exception is to the effect that there was a variance between the bill of particulars furnished and the proofs submitted, but we think there was no substantial variance. Besides, it does not appear that any objections on this ground were made on the trial, which would be necessary in order to make the objections available here. The objection of variance must be made when the evidence is offered,

and the reason of the variance pointed out, so that, if it appears that a variance would occur, the party may amend his declaration or bill of particulars. Swift & Co. v. Ruthowski, 182 Ill. 18, 54 N. E. 1038; Swift v. Modden, 165 Ill. 41, 45 N. E. 979; Westville Coal Co. v. Schwartz, 177 Ill. 272, 52 N. E. 276.

The objection made on the trial, of most apparent substance, was this: It appeared on cross-examination of some of the plaintiffs' witnesses that Hastings & Co., who acted for defendant in submitting orders to the company, and receiving the goods when shipped, and delivering them to plaintiffs, had some interest in the plaintiffs company. The fact was not pleaded, but came out in the testimony, and the question was fairly submitted by the court to the jury whether that objection had been waived by the subsequent conduct of the defendant in receiving further orders through them from the plaintiffs and going on with the contract. The evidence went to show this, and the jury must have so found. The court instructed the jury that, if they found defendant did not know of the connection between Hastings & Co. and the Cycle Bar Company when the orders were accepted, it could, upon discovering the fact, rescind the contract, unless it subsequently approved and ratified it. This instruction was asked by the defendant, and given by the court at its request.

The court also further instructed the jury, at the request of the plaintiffs' counsel, that if they should find from the evidence that the defendant had no knowledge of the connection between Hastings & Co. and the Cycle Bar Company at the time the contract was accepted, but afterwards discovered such relation, it thereupon became the duty of the defendant to rescind the contract within a reasonable time; and if the jury found from the evidence that, after knowing of Hastings & Co.'s connection with the Cycle Bar Company, the defendant recognized the contract as binding upon it, and acted upon the contract, it waived any objections thereto, and the jury should find the contract good. This instruction was objected to by defendant's counsel, as was each and all of the instructions given at the plaintiffs' request. But it was obviously correct. The evidence showed that, after knowledge of Hastings & Co.'s relations to the parties, the defendant went on filling orders, and nowhere made any sign of a wish to rescind or abandon the contract. The finding of the jury upon this, as upon all the other issues, was in favor of the plaintiffs, and cannot be questioned here, except for error in the record. The defendant was evidently willing that Hastings & Co. should continue to act in the capacity where they had been acting. Hastings & Co. were not acting as defendant's agents to make contracts. They could only submit orders to the defendant for its acceptance or rejection, so that there was no great chance for fraud, and there was no evidence that anybody was injured by reason of their relation to the plaintiffs.

Exceptions were regularly taken to each and all of the instructions given to the jury by the court at the request of the plaintiffs, but we find no error in these instructions, and think the case was fairly given

to the jury. Several special instructions, also, were asked by defendant's counsel, and refused by the court, as we think, properly.

The first was, in substance, that no damage could be recovered because of the inability of the plaintiffs to furnish work for their employés, occasioned by the defendant's failure to deliver the material covered by the contract. This was refused, probably because not applicable to the case, as no such damage was claimed on the trial or proven by the plaintiffs.

Another was that the court instruct the jury that there was no evidence to sustain the second count of plaintiffs' declaration, and the same in regard to the first count. These were properly refused, because clearly opposed to the truth of the case; there being evidence of damage under each and all of the counts.

Several other instructions were asked for, covering the same question—as that the jury should disregard all evidence of damage by reason of the failure of defendant to deliver 50,000 pieces of material 6 inches long, mentioned in the contract, and 100,000 pieces of handle bar stock called for by the contract, and 50,000 additional handle bars, as per specifications for shipment on December 28, 1898; also to disregard all evidence relating to breaking of handle bar stock, and on account of defects in handle bar stock. These instructions, if given, would be equivalent to taking the case from the jury and directing a verdict for the defendant. Also to instruct the jury to disregard all evidence of damage from plaintiffs having to shut down and ceasing to operate the factory. This last was properly refused, because no such damage was claimed on the trial or proven. We think all of these instructions properly refused on their merits. But there is another reason, of a more technical character, why exceptions to their refusal cannot avail in this court. There is nothing in the bill of exceptions to show that there were not other instructions given covering the same points. The instructions contained in the record, it appears, were all special instructions, given at the request of counsel on one side or the other. But there is nothing to show that there were no general instructions given by the court, or that the instructions so given were the only ones given in the case. The next proceeding after these instructions were refused was a notice by defendant's counsel for a motion for a new trial, which was overruled by the court. When the record fails to show that the entire charge given was set out in the bill of exceptions, the presumption is that the court gave in substance all proper instructions, and charged the law correctly. Bennett v. Hardkrader, 158 U. S. 446, 15 Sup. Ct. 863, 39 L. Ed. 1046; Scaife v. Land Co., 33 C. C. A. 47, 90 Fed. 238; Myers v. Sternheim, 38 C. C. A. 345, 97 Fed. 625.

There were some other exceptions taken on the trial to the admission of evidence, which, if we do not notice in detail, it is not because they have not been fully considered by the court. The case seems to have been fairly tried, and properly submitted by the court, and the verdict of the jury abundantly sustained by the evidence.

The judgment of the court below is affirmed. Affirmed.