### B. F. SMALL v. G. L. McMURPHY ET AL.

#### No. 698.

**1. Judgment for Undivided Interest—Construction.**

Plaintiff sued for all of a tract of land, and showed title to an undivided half interest. It appeared that defendant had formerly owned the other half interest, and had, prior to the suit, made a deed of the tract to a third person, purporting to convey the full title. An agreed judgment was entered, vesting title to an undivided half interest in each of the parties, plaintiff and defendant. Held, that the judgment did not vest in the defendant the title to that half interest held by plaintiff at and prior to the suit.

**2. Railway Company—Limitations and Adverse Possession.**

A railway company, as any individual, may acquire the title to land by adverse possession under the statutes of limitation. See the opinion for facts held sufficient to constitute actual and adverse possession of land by a railway company.

**3. Same—Right to Hold Land.**

Since the statutes empower a railway company to purchase and hold land necessary to accomplish the purpose of its incorporation, it may lawfully purchase and hold a tract of land from which to obtain gravel for the construction and repair of its roadbed.

APPEAL from Uvalde. Tried below before Hon. EUGENE ARCHER.

*Clark, Summerlin & Fuller,* for appellant.

*A. A. Dial,* for appellees.

JAMES, CHIEF JUSTICE.—The following are the conclusions of the trial judge, which govern this appeal, there being no statement of facts·

1. That the land in controversy was patented to Randall Jones on the 28th of September, 1847.

2. That Randall Jones conveyed the land by warranty deed to J. L. Tompkins and plaintiff, G. L. McMurphy, on the 28th day of November, 1865.

3. At the date of conveyance last above named plaintiff was an unmarried man.

4.   The plaintiff married on the 17th day of May, 1866, nearly six months after he acquired a half interest in the land by the conveyance from Randall Jones, as set out in the second conclusion of fact, and that the plaintiffs, Chas. A. McMurphy, James L. McMurphy, Daniel D. Mc-Murphy, Henry J. McMurphy and Kate McMurphy, are the issues of said marriage.

5.   That on the 18th day of August, 1894, the plaintiffs in this suit brought suit in the District Court of Uvalde County for the whole of the tract of 320 acres, as described in the patent to Randall Jones, against the Galveston, Harrisburg & San Antonio Ry. Co., and there-after, on the 11th day of January, 1895, at the January term of said District Court, there was a decree entered up by agreement between the parties to the suit, that plaintiffs should recover of the defendant an undivided half interest in the land sued for, except a strip of land 200 feet wide lying equally on each side of the center line of the defendant's railway, from a point where the railway enters the land coming from the east to a point where it leaves the same on the Nueces river, the same being intended to cover the land occupied by said company's line of railway; and also excepting two acres of land in a square upon which was situated the section house of defendant, the section house being in the center of said two acres.  Also, that the defendant, the G., H. & S. A. Ry. Co., should recover from the plaintiffs an undivided half interest in the tract, and that it recover of them the entire interest in that portion above described as occupied by defendant's road-bed and section house.

6.   That on the 6th day of January, 1869, in the District Court of Galveston County, Isador Dyer recovered a judgment against Sarah A. Winter, James L. Tompkins and Gabriel L. McMurphy for the sum of six thousand, seven hundred and fourteen dollars ($6,714) with inter-est at 12 per cent and cost of suit.

7.   That on the 10th day of May, 1877, execution issued out of the District Court of Galveston County against all of the defendants in said judgment and was directed to the sheriff of Uvalde County, which was by him levied upon the land, and upon the 3rd day of July the land was sold under said execution, and bid in by S. M. Hartman for the sum of $140.

8.   That on the 3rd day of July, 1877, the sheriff of Uvalde County, George S. Johnson, executed a deed to S. M. Hartman, the purchaser at said execution sale, which was filed for record on the 6th day of July, 1877.

9.   That on the ———— day of ————, S. M. Hartman executed her power of attorney to J. L. Tompkins.

10.   That on the 10th day of October, 1877, Sarah M. Hartman, by her attorney in fact, J. L. Tompkins, conveyed said land to A. H. Cas-tell, which deed was filed in Uvalde County for record on the 30th day of May, 1881.

11.   That on the 23rd of May, 1881, A. H. Castell deeded said land to J. L. Tompkins, which deed was filed for record May 30, 1881.

12. On the 8th of August, 1881, J. L. Tompkins deeded to the G. H. & S. A. Ry. Co. eleven acres out of said tract, being a strip of land 1800 varas in length by 36 varas in width, running through the survey, composing the road-bed or right of way over the land as located by the G. H. & S. A. Ry. Co., which deed was filed for record in Uvalde County on the 17th of December, 1881.

13. That on the 8th of February, 1882, J. L. Tompkins executed to Wm. Benson a power of attorney, and that Wm. Benson, under said power of attorney, on the 8th of June, 1882, executed to the G. H. & S. A. Ry. Co. a warranty deed to the whole of said tract, which deed was filed for record in Uvalde County, June 8th, 1882.

14. That on the 17th of July, 1894, the G. H. & S. A. Ry. Co. conveyed all the tract to defendant, B. F. Small, except that portion covered by the section house and road bed.

15. I find the following facts, as proven by defendant in support of his plea of limitation:

That the G. H. & S. A. Ry. Co. built their railroad over the land in question in 1882, and have been running continuously over it since that time. That the railroad track enters the land on the south line and runs through the track for about a mile, or through about one-half the length of the tract. That the railroad company fenced their right of way in 1887 or 1888, the same being 100 feet wide. There was a gravel pit south of the railroad right of way to which the railroad ran a switch for the purpose of loading gravel. This switch has been there for the last six or seven years, and has been used by the company up to this time. Benson had a verbal lease of the land from one Fry, who represented the railroad company soon after its purchase. Benson kept the land until it was leased by the railroad company to one Irby, who occupied a portion of it from September 12, 1890, to September 12, 1894. Irby had all the tract leased except the road-bed, and Benson commenced fencing in the fall of 1890 and finished in the spring of 1891. He fenced around his land, which was north of this tract, and joined on to the fence of the railroad company's right of way, by which means all of the tract of land in question north of the railroad was fenced, leaving the south of the railroad in Hatch's pasture, who had joined on to the fence of the railroad company's right of way, south of the tract, and when Irby leased from the railroad company, he used that portion of the tract in Hatch's pasture by some agreement with Hatch. The section house was built on the completion of the railroad and was located on the tract of land outside of the right of way, and was built by the G. H. & S. A. Ry. Co. and has been continuously occupied and used by the company as a section house up to this date. While Benson had possession, he used the land for grazing purposes; while Irby had possession, he lived upon it with his family in a small house that was on the land.

Prior to the building of the switch above named, there had been an-

other one put to the south of it which led to a point outside of the right of way, which was constructed about the time the road was completed, and used up to the time of the construction of the last switch for loading gravel and switching cars.

*Opinion.*—There are two assignments of error. The substance of the first assignment is that the legal effect of the agreed judgment in the action brought by plaintiffs against the G. H. & S. A. Ry. Co., rendered in January, 1895, was to vest in the G. H. & S. A. Ry. Co. the title to the undivided half of the survey that had appertained to G. L. McMurphy, and that at the time of the trial in question the same was an outstanding title in the G. H. & S. A. Ry. Co.

It appears that when the suit referred to was brought, the G. H. & S. A. Ry. Co. had already executed to B. F. Small a deed to all the survey except that portion covered by the section house and road-bed, and the facts show that at the time of making such deed the railway company had a valid paper title to an undivided half of the land through J. L. Tompkins, and that the other undivided half was in G. L. McMurphy, so far as the written evidence of title was concerned. Under these circumstances it would be unreasonable to hold that the judgment which respected McMurphy's title to one-half of the land outside of the road-bed and section house had vested it in the railway company.

The second assignment is that the evidence shows that the defendant was entitled to all the land except that covered by the road-bed and section house, by virtue of the statute of limitation of ten years. This assignment we believe to be good. The following facts appear in this connection, viz.: That the G. H. & S. A. Ry. Co. purchased of J. L. Tompkins the right of way of 36 varas width across the tract on August, 8, 1881; that on June 8, 1882, it obtained a deed from Tompkins to the entire tract, which deed was recorded on said day; that in 1882 it built and begun to operate its line of railway, which it has since continued to do. That upon the completion of its road it erected a section house outside of the right of way, which it has continuously used as such. That since the completion of its road in 1882 it has also maintained switches leading from the right of way to a gravel pit somewhere on the land, which switches have been in continuous use for loading gravel and switching cars, and that the company, after so possessing the land for more than ten years, deeded the tract to defendant in 1894 less the right of way section and section house.

It would probably not be questioned that with such a deed and like user for more than ten years an individual would be held to have had constructive possession of the entire survey. Evitts v. Roth, 61 Texas, 81.

It is claimed that the railway corporation had no right to acquire the land outside of what was covered by its track and section house

in view of articles 4211, 4212 and 4214, Revised Statutes. Said articles, together with the accompanying article 4213, certainly secure such corporations in the right to purchase, hold and use lands necessary for its railway stations and other accommodations necessary to accomplish the object of its incorporation. It seems to us impossible to declare from the facts, that the purchase was of land not necessary for corporate purposes. The right of way, it seems, had already been purchased from Tompkins, but the section house and switches leading to a gravel pit, and the gravel pit, were established on land in the survey outside of the right of way, included in the second purchase. Station houses and switches are obviously necessary accommodations in the operation of a railway, and the same may be said of facilities for obtaining gravel, as the company is required to keep its road in repair. If the purchase of the survey was made to obtain land for these purposes (and there is nothing to negative it and the facts indicate it), it should not be held that it was unauthorized to do so. If it had the right to purchase the land, and in doing so it received by its deed an imperfect title, we see no reason why it should not stand in the same situation as other persons with reference to the statutes of limitations.

We are of opinion that the facts show that the railway company had become entitled to the land by virtue of the ten years statute when it conveyed to the defendant.

Therefore the judgment will be reversed and rendered for the appellant.

*Reversed and remanded.*

Delivered October 23, 1895.