HOUSTON OIL CO. OF TEXAS et al. v. GOODRICH et al.

{Circuit Court of Appeals, Fifth Circuit.   Feb. 10, 1914.   On Rehearing,
April 7, 1914.)

No. 2524.

1. DEEDS (§ 207*)—GENUINENESS OF SIGNATURE—SUFFICIENCY OF EVIDENCE—
ANCIENT DEED.
Evidence considered and *held* to establish the genuineness of an ancient
deed to a Mexican grant of land in Texas, which deed was executed in
1889, acknowledged before a notary whose signature was proved, duly re-
corded, and was found in the possession of a descendant of a subsequent
grantee in association with the admittedly genuine original duplicate
Mexican grant.
[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 614–624; Dec. Dig.
§ 207.*]

2. ADVERSE POSSESSION (§ 57*)—DURATION AND CONTINUITY OF POSSESSION—
CONFLICTING TITLES.
Evidence *held* insufficient to establish adverse possession of land by suc-
cessive occupants of such continuity and for such length of time as to sus-
tain a plea of title by limitation by a defendant, where it was also shown
that there was an outstanding adverse claim of title during the time and
there was evidence tending to show that the possession was taken and
held thereunder, and not under defendants' grantors.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 277,
278, 655, 667, 687; Dec. Dig. § 57.*]

3. ADVERSE POSSESSION (§ 115*)—EXTENT AND CHARACTER OF POSSESSION—
LEASE OF SAND PITS.
Defendant deraigned title to 2,578 acres of land in Texas through a com-
plete chain of deeds from the original Mexican grantee, but the first deed,
while prior in point of execution, was not recorded until after a second
deed made by the same grantor, which under the law of Texas made it
junior in legal effect.   Defendant and its predecessors in title paid the
taxes on the land for many years.   By written contracts it licensed a third
person to remove sand from a pit covering some seven or eight acres, and
such removal continued for more than five years before plaintiffs, adverse
claimants, brought suit to recover the land, and during that time two
houses were built on the land and occupied by employés of the contractor.
*Held*, that such acts of possession were sufficient and of a character to re-
quire the submission to the jury of a plea of the five-year statute of
limitation of Texas by defendant.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314,
691–701; Dec. Dig. § 115.*]

4. ADVERSE POSSESSION (§ 100*)—EXTENT OF POSSESSION UNDER COLOR OF TI-
TLE—OCCUPANCY OF PART OF LARGER TRACT.
Actual possession of a small part of a tract of land by one who claims,
under color of title, evidenced by registered deeds, the entire tract ex-
tends his possession to the boundaries described in his color of title in
the absence of actual adverse possession of any part of the tract by an-
other.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 547–
574; Dec. Dig. § 100.*]

5. ADVERSE POSSESSION (§ 25*)—POSSESSION BY LICENSEE—EXTENT.
Where the claimant of a tract of land under color of title evidenced by
registered deeds, by contracts sold to another sand out of a pit on the
land, not defined by metes and bounds, with the right to enter and remove
it, the sand to be paid for at a stated sum per car load, the possession

of the licensee inured to the benefit of the licensor and constructively ex‹ tended to the boundaries of its color of title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 116– 120; Dec. Dig. § 25.*]

Shelby, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Action at law by Cornelia G. Goodrich and others against the Houston Oil Company of Texas and others. Judgment for plaintiffs, and defendants bring error. Reversed.

This was an action instituted by certain of the defendants in error, who were plaintiffs in the court below, to recover the title to and possession of a tract of land consisting of 2,578 acres of the northern portion of the Felder league, situated in Hardin county, Tex. Certain other of the defendants in error were permitted to intervene and assert their title to the land in controversy. The action was filed in the United States Circuit Court, for the Eastern District of Texas, that court having jurisdiction of the case by reason of the diversity of citizenship of the original parties to it; and was transferred to the District Court for the same district upon the taking effect of the Judicial Code. The interveners claimed title under a remote grantor in the plaintiff's chain of title, originally both as against the plaintiffs and defendants, but, before final disposition of the cause, the plaintiffs and interveners combined their interests in the land, so that the only question decided by the District Court was the title to the land as between the plaintiffs and interveners upon the one hand and the defendants upon the other hand. There were amended petitions, interventions, and answer and cross-actions filed by the respective parties, but they are of no importance in considering the questions presented by the writ of error. The court below, after the evidence was completed, directed a verdict for the plaintiffs and interveners against the defendants for the land in controversy, and against the defendant the Texas Builders' Supply Company for the value of sand taken by it from the lands in the amount of $1,286, and in favor of that company against the defendant the Houston Oil Company for like amount. The writ of error was sued out by the defendants the Houston Oil Company, the Kirby Lumber Company, and the Maryland Trust Company, alone. Their codefendant, the Texas Builders' Supply Company, refused to join in the writ of error, and a severance was had as to it. The only error assigned and insisted upon was the action of the court below in directing a verdict for the plaintiffs and interveners for the land sued for.

T. M. Kennerly, of Houston, Tex., and Charles T. Butler, of Beaumont, Tex. (H. O. Head, of Sherman, Tex., of counsel), for plaintiffs in error.

John L. Little, of Kountze, Tex., and E. E. Easterling, H. M. Whitaker, W. D. Gordon, and Thos. J. Baten, all of Beaumont, Tex., for defendants in error.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). The Felder league, a part of which was the land in dispute, was granted by the government of Mexico to Charles A. Felder, under whom both parties claim prior to 1836. The plaintiffs claimed through a deed, claimed to have been executed by the grantee Felder to one John A. Veatch on June 18, 1839, which was recorded in Liberty county, Tex., on October 21, 1839, and thereafter in Menard or Tyler county, Tex., and still

later in Hardin county, Tex   Veatch conveyed the land to James Morgan by deed dated March 15, 1841, and the interveners claimed as heirs of James Morgan.   James Morgan conveyed to W. D. Lee by deed dated October 17, 1845, which was witnessed but neither acknowledged, proven, nor legally recorded.   By agreement between plaintiffs and interveners, this deed was admitted in evidence.   The plaintiffs claim title, through intermediate grantors, from W. D. Lee.   In the chain of title, under which the plaintiffs claimed, was a grantor named William Walker, who received a conveyance of the land September 22, 1848, from Richard C. Washington, who had in turn received a conveyance from Benjamin E. Green, who was W. D. Lee's grantee.   A descendant of William Walker produced what purported to be the original deed from Charles A. Felder to John A. Veatch, together with the admitted original testimonio, or duplicate original Spanish grant, delivered by the Mexican Commissioner to Charles A. Felder, the original grantee; the protocol, or first original, having been deposited in the public archives and on file, at the time of the trial, in the General Land Office of Texas, and therefrom produced upon the trial.

The defendants traced title back through intermediate grantors to one William Daniels.   The original grantee, Charles A. Felder, conveyed to William A. Daniel on the 10th of June, 1839, eight days before his conveyance to plaintiffs' and interveners' predecessor in title, John A. Veatch.   However, the conveyance from Felder to Daniels was not recorded until February 23, 1842, and under the then Texas statute the first recorded conveyance took precedence.   The record title was therefore in plaintiffs and interveners, if the deed from Felder to Veatch was a genuine deed.   The defendants filed an affidavit of forgery as to the signature of the grantor to this deed, under the Texas statute, and this had the effect to put in issue the genuineness of the signature of Charles A. Felder to the deed to John A. Veatch. This is the only issue in the case upon this appeal, so far as the title depends upon the record.   Affidavits of forgery were filed by the plaintiffs and interveners as to certain deeds relied upon by defendants, but no evidence of forgery was offered by the plaintiffs and interveners to sustain the issue.

The defendants also claimed title by the statutes of limitation of Texas of three, five, and ten years, under two separate claims of possession.   The first was that of Elizabeth Browning and her successors along about the year 1870, and the second was that of the Texas Pine Land Association, the immediate grantor of the Houston Oil Company, one of the defendants, from 1892 until 1901, in connection with the possession of the Texas Builders' Supply Company, also a defendant, which removed sand from the land in controversy under three contracts with the Houston Oil Company, extending over a period from the 16th day of October, 1902, until the beginning of the suit on June 7, 1911.

There are therefore two questions presented by the record for decision:

(1) Was the deed from Charles A. Felder to John A. Veatch shown without conflict in the evidence to be a genuine deed?   The court below held that it was, and defendants complain here of this ruling.

(2) Was there evidence which the court below should have submitted to the jury in support of the defendants' pleas of the statutes of limitations, based either upon the possession of Elizabeth Browning and her successors in 1870, or upon the possession of the Texas Pine Land Association, defendants' immediate grantor, and that of the Texas Builders' Supply Company, its contractor from 1902 until the bringing of the suit. The court below held that theie was no question of fact to be submitted to the jury upon these pleas, and the defendants also complain of this ruling.

[1] 1. Upon the issue of the genuineness of the signature of Charles A. Felder to the deed purporting to be from him to John A. Veatch, the defendants introduced the original protocol, containing the signed application of Felder for the league granted to him by the Mexican government, and the testimony of two handwriting experts, who had compared the signature to the protocol with what purported to be Felder's signature to the original deed to Veatch, and testified that the signatures did not resemble each other and in their opinion were not written by the same person. The applicant for land grants in Texas was not at the time of the application of Felder required to sign the application in person and in his own handwriting, though presumptively he would do so. This was the evidence relied upon by defendants to sustain the issue of forgery. The original deed from Felder to Veatch was produced by a witness who was the descendant of an·intermediate grantee of the land from Veatch, and therefore ·found in the proper custody. It was an ancient deed, free from marks of suspicion. It was found in association with the admittedly genuine original duplicate Mexican grant to Felder in the custody of the same producing witness. It bore a certificate of acknowledgment under the hand and official seal of an ex officio notary public of Texas, the signature to which was shown to be in the handwriting of the notary. The law of Texas did not require the signature of a deed to be written by the grantor, even by a grantor who was able to write, provided it was properly acknowledged by 'him. There was also evidence of the good character of the grantee Veatch. Upon this evidence, we are not prepared to say that the court below should have submitted the issue of forgery to the jury.

2. Upon the issue of the statute of limitations (a) as based upon the possession of Elizabeth Browning and those succeeding her in possession, and (b) as based upon the possession of the Texas Pine Land Association, and of the Houston Oil Company, through the Texas Builders' Supply Company, under its contract with that company.

[2] (a) The defendants introduced·evidence tending to show that in 1870 or 1871, a widow, Elizabeth Browning, occupied a house on the Felder league and cultivated land upon it, and cut timber from it, until the year 1875; that one Madison Cane succeeded her in possession, moving into the house before she had removed from it, and continuing in possession for three years, making three crops; that a man named Bill Cane, who had been employed by Madison Cane while the latter was in possession, took possession upon his departure, and stayed two years, tending the ferry on the east side of Village creek and cultivating a ten-acre field on it. for ⁺two years till his death,

which occurred on the place; that a man named Frank Womack, two months after Bill Cane's death, bought out Cane's widow, buying her claim to the ferry and putting a logging camp on the place; and that there had been a ferry on the land for many years and up until 1891. The defendants also introduced evidence tending to show that one P. S. Watts, who acted as the agent of one Moore, one of the remote grantees in defendants' chain of title, was on the league frequently during the times mentioned, collecting stumpage from the different parties who cut timber from the league, and that Mrs. Browning recognized Watts as agent for Moore, the claimant of the land, and paid him stumpage for timber she took from the league. There is also evidence from which it might be inferred that some of the successors in possession of Mrs. Browning attorned to one or more of the grantees in defendant's chain of title, while in possession. The evidence as to the length and the continuity and the extent in area of the possession of Mrs. Browning and her successors is indefinite and unconvincing. It is even less persuasive in showing that those in this line of possession recognized the chain of title, under which defendants claim, as the paramount one. On the contrary, there is an independent chain of title, shown without dispute, under which this possession was maintained. E. B. Ratliff conveyed 640 acres, known as the James Brown survey, to Sterling Spell in June, 1866; Sterling Spell conveyed the same land to Elizabeth Browning in September, 1870; Elizabeth Browning conveyed the same land to Frank C. Womack in 1883, and Womack instituted an action to recover title and possession of the same land against the Texas Pine Land Association, the immediate grantor of defendant the Houston Oil Company, on February 20, 1884, but afterwards took a nonsuit in the case. In view of the inconclusive character of the evidence as to the length, continuity, extent, and character of the possession of the defendants' predecessors in title through the possession of Elizabeth Browning and her successors, and in view of the undisputed adverse chain of title, contemporaneous with such possession, as shown by the conveyances mentioned, and by the suit instituted by Womack to enforce the adverse claim, we think the court below decided correctly that there was not sufficient proof of tenancy or such continuous possession of the tract, actual or constructive, by the alleged tenants for the prescribed period, as to justify the submission of the issue of the statutes of limitations pleaded by the defendants to the jury, as based on the Browning possession. A verdict for defendants based on the possession of Elizabeth Browning and those in privity with her would be so unsupported by the evidence as to justify the court in setting it aside.

[3] (b) This brings us to the question as to whether the record contains evidence that should have been submitted to the jury of the possession of the Texas Pine Land Association and of the Houston Oil Company, through its contractor, the Texas Builders' Supply Company, for the period prescribed by either of the Texas statutes of limitations of three, five, or ten years.

The defendant the Houston Oil Company traced title from itself back to the sovereignty, through a complete chain of deeds, all of which

were registered. It and its predecessors had paid taxes on the entire tract in controversy for very many years. There was no evidence introduced that any deed in its chain of title was a forged instrument, though affidavits of forgery were filed against two or more of them. It was contended that one of the grantors in the chain of title, William Daniels, was not the William A. Daniel who was the grantee of the original grantee Felder. This, however, was a question of fact for the jury. The defendants claimed through a deed of the original grantee, prior in point of date of execution, but subsequent in date of recordation, and hence under a junior deed in legal effect, and were not entitled to the benefit of the three-year statute. Defendants, claiming under registered deeds, having paid taxes on the land each year during the period, and no deed in their chain of title being shown to be a forgery, were entitled, if shown to have been in peaceable and adverse possession of the land, using, cultivating, and enjoying the same for the prescribed period, to the benefit of the five-year statute of limitation. We think there was evidence of the necessary elements, apart from possession itself, sufficient to make a jury case under the five-year statute.

Was there evidence of peaceable and adverse possession of defendants or their predecessors, accompanied by use, enjoyment, and cultivation, for a period of five years before the bringing of the suit in June, 1911, which should have been submitted to the jury?

In the year 1893 a railroad was built through the tract of land in controversy, which was then owned by the Texas Pine Land Association. The land was conveyed by the association in 1901 to the Houston Oil Company. During the intervening period, the evidence shows that the railroad company took sand from the lands both within and without the right of way; that its right of way was acquired and occupied with the consent and acquiescence of the association; and that timber and ties were cut from the land by persons acting under the license of the association, and used by the railroad company. During all this period, and for many years preceding it, taxes were annually paid by defendants and their predecessors in title on the entire tract. After the conveyance to the Houston Oil Company and in 1902 that company made a contract with the Texas Builders' Supply Company, licensing it to remove sand from a pit, known as "F" pit, on the land, and the contract was twice renewed before the bringing of the suit. Under these contracts 605 cars of sand were removed during the period from 1910 to 1912, the value of which as shown by the judgment was $1,286. In one month 63 cars were removed, and for the period mentioned the daily average exceeded two. The evidence tended to show that two houses were built on the land, and occupied for more than, five years by men who worked in excavating and loading the sand on cars; that the pit was excavated over an area of seven or eight acres, and was not a mere encroachment beyond the railroad right of way by the railroad company. The evidence showed that the Texas Builders' Supply Company, in removing the sand, recognized the title and ownership of the Houston Oil Company, paying it for all sand removed. This status, without looking for aid to the acts of the Texas Pine Land Association, continued for a period of more than five years

prior to the institution of this suit. If acts of possession of this kind are of a character to support the plea of the statute of limitations, then that issue should not have been withdrawn from the jury.

It is asserted that they are insufficient and for two reasons: (1) Because their character, if they had been done by the land owner itself, was not such as to give notice of an adverse claim to the entire tract of 12,578 acres. (2) Because they were done by the contractor, and not by the owner, and by the terms of the contract the contractor was restricted in possession to a specific portion of the land (the sand pit, designated "F" in the contract), and the owners' possession was equally as circumscribed as was the contractor's.

[4] The principle is a general one and is well established in Texas that actual possession of a small part of a tract by one who claims, under color of title, evidenced by registered deeds, a large tract, extends his possession to the boundaries described in his color of title, in the absence of actual adverse possession of any part of the tract by another. Ellicott v. Pearl, 10 Pet. 412, 9 L. Ed. 475; Hunnicut v. Peyton, 102 U. S. 333, 26 L. Ed. 113; Smith v. Gale, 144 U. S. 509, 12 Sup. Ct. 674, 36 L. Ed. 521; Scaife v. North Carolina Land Co., 90 Fed. 238, 33 C. C. A. 47; Evitts v. Roth, 61 Tex. 81.

Nor is it necessary to the application of this principle that the part occupied should have borne any considerable proportion to the entire tract, or that it should be inclosed under fence, or dwelt upon by the occupant. It is sufficient if it be used and enjoyed in a way consistent with the character and utility of the land. So it has been held that the continued removal of sand from an otherwise useless vacant lot is an act of possession of the land that may ripen into title, and as well the use of a tract of land for the deposit of stone, the removal of timber from it, cultivation without occupancy or inclosure, and many other like acts, when done with color of title and accompanied by the payment of taxes. Ellicott v. Pearl, 10 Pet. 411, 9 L. Ed. 475; Ewing v. Burnet, 11 Pet. 41, 9 L. Ed. 624; Holtzman v. Douglas, 168 U. S. 278, 18 Sup. Ct. 65, 42 L. Ed. 466; Small v. McMurphy, 11 Tex. Civ. App. 409, 32 S. W. 788; El Paso v. Ft. Dearborn National Bank, 96 Tex. 496, 74 S. W. 21.

[5] So it seems quite clear, if the defendant the Houston Oil Company had removed the sand that the evidence shows was removed by its contractor, the Texas Builders' Supply Company, during the period from 1902 to 1911, this, in connection with the contemporaneous occupancy of the houses by its employés, and the payment by it of annual taxes on the entire tract, would have constituted an adverse possession on its part that would have been extended by its color of title to the entire tract of 2,578 acres, and given it title thereto by the statute of limitations of five years. Does the fact that the sand was removed by a third party under a contract with the owner or claimant change the conclusion? It is contended that it does because, by the terms of the contracts between the Houston Oil Company and the Texas Builders' Supply Company under which the sand was removed, the right of the contractor to remove it was impliedly limited to one specific portion of the tract, and the possession of the owner or claimant, through its contractor, was likewise limited to the same portion.

The contention is based upon the principle that, when an adverse claimant, holding under color of title, leases a portion of the tract adversely claimed by him to a tenant, the lease restricting the possession of the tenant to the lesser tract, described by metes and bounds, the adverse possession of the landlord, by virtue of his tenant's possession, extends only to the tract described in the lease by metes and bounds, and not to his entire tract described in his color of title.

In the case of Ellicott v. Pearl, 10 Pet. 411–443 (9 L. Ed. 475), Justice Story said:

"In Jones v. Chiles, 2 Dana (Ky.) 28, it was held by the court that, if a landlord settles a tenant without bounds upon a tract of land, he is in possession to the limits of the claim. But if the tenant is restricted by metes and bounds, to a part only of the land, the landlord's possession is in like manner limited."

In the cases of Read v. Allen, 63 Tex. 158, and Craig v. Cartwright, 65 Tex. 424, the principle is laid down that:

"Where one holding a deed to land described by metes and bounds leases a part of it to a tenant by specific metes and bounds, the possession of. the tenant is only coextensive with the bounds specified in the lease, and not with the whole tract."

In the case of Bowles v. Brice, 66 Tex. 730, 2 S. W. 733, the court said:

"The question is: Must the possession in this case be restricted to the portion of the premises actually occupied by the tenants? It is held in Read v. Allen, 63 Tex. 154, and in Texas Land Co. v. Williams, 51 Tex. 61, that when a party claiming land leases by written contracts specific parts of it, describing them by metes and bounds, his possession through his lessees extends only to the parcels so defined. * * * But we consider that we have a different case before us. Shall a party who lets to tenants, for the purpose of cultivating the improved part of a tract of land, be deemed to have lost his constructive possession of the portion which is unimproved? We think not. He applies the property to the only use of which it is susceptible, and should be deemed as exercising ownership over the whole tract as fully as if he were in possession of the improved portion, cultivating it himself. It is true that the witnesses state that the tenants in this case had no right or authority over the land not in cultivation. This is ordinarily the case in the farming out of agricultural lands. A tenant, who leases of one claiming a house and lot in a city a room in such house, does not usually have any dominion over other parts of the property, though unoccupied. Yet is it to be held that the landlord's possession is restricted to the room so leased? This question must be answered in the negative. No arbitrary rule can be laid down in this class of cases; and we conclude that, in a case like the one present, the possession of the landlord should be construed to be coextensive with the boundaries of his deed."

In the case of Haynes v. T. & N. O. R. R. Co., 51 Tex. Civ. App. 53, 111 S. W. 429, the Court of Civil Appeals of Galveston said:

"It was held by the Supreme Court, in Read v. Allen, 63 Tex. 158, that, 'where one holding a deed to land described by metes and bounds leases a part of it to a tenant by specific metes and bounds, the possession of the tenant is only coextensive with the bounds specified in the lease, and not with the whole tract,' and the same rule is also announced in Craig v. Cartwright, 65 Tex. 424. The later case of Bowles v. Brice, 66 Tex. 730 [2 S. W. 729], while not in terms overruling the former opinions in the cases referred to, seems to us to hold directly to the contrary. We gather from the statement of the facts in the latter case that the only possession of the land held by the owner was through tenants to whom had been rented the improved and

cultivated land, only a part of the whole tract, and that these tenants had no right or authority over the land not in cultivation. We can see no difference between the facts of that case and this. We understand the court to hold in that case the constructive possession of the owner, by virtue of this actual possession of the tenant, extends to the limits of the entire tract, and was not limited to the boundaries of the portion leased to the tenants."

The cases quoted from show that, where the principle relied upon obtains, its scope is restricted to cases in which the tenant is restricted by the description of the premises leased to a specific part of· the tract, described by metes and bounds. The Supreme Court of the United States, in the case of Ellicott v. Pearl, 10 Pet. 411, 9 L. Ed. 475, quote approvingly from the case of ·Jones v. Chiles, 2 Dana (Ky.) 28, the principle that "if a landlord settles a tenant, without bounds, upon a tract of land, he is in possession to the limits of the claim," and that the landlord's possession is limited to the part occupied by the tenant, only, "if the tenant is restricted by metes and bounds, to a part only of the land."

The earlier Texas cases cited are reconcilable with the case of Bowles v. Brice, 66 Tex. 724, 2 S. W. 729, only upon the distinction that those were cases in which when a party "claiming land, leases by written contract specific parts of it, describing them by metes and bounds, his possession through his lessees extends only to the parcels so defined." In the Bowles v. Brice Case, the lease was of the improved parts of the land, without specific description, for the purpose of cultivation. The court, distinguishing that case from .the two earlier ones, says:

"But we consider that we have a different case before us. Shall a party who lets to tenants, for the purpose of cultivation, the improved part of a tract of land, be deemed to have lost his constructive possession of the portion which is unimproved? We think not. He applies the property to the only use of which it is susceptible, and should be deemed as exercising ownership over the whole tract as fully as if he were in possession of the improved portion, cultivating it himself."

The distinction is a narrow one, based possibly upon the idea that a description by metes and bounds in the lease is equivalent to an implied exclusion of the tenant from the part of the tract not so described in the lease; while a lease of the improved portions of a tract is the equivalent of a lease of the tract for the purpose of cultivation, the only parts useful to that end being the improved parts, and that such a lease implies no exclusion of the tenant from the remaining portions, not improved, and so the landlord's possession extends to the whole tract by virtue of his tenant's.

The case of Houston Oil Co. v. Kimball, 103 Tex. 94–105, 122 S. W. 533, 124 S. W. 85, only holds that while the successor in possession of a part of a tract of one, who had recognized the title of a claimant, is estopped to deny his title, because of his privity with his predecessor in possession, yet, in order that the claimant may benefit by the possession of the occupant to the entire tract, it must appear that the occupant for himself or for the claimant claimed or exercised possession over the entire tract.

Whether a tenant occupying a part only does claim and exercise possession to the limits of the tract, is to be determined by the facts of each case; and, as the Texas Supreme Court said in the case of Bowles v. Brice, supra, "no arbitrary rule can be laid down in this class of cases."

The Texas Builders' Supply Company was in possession under contracts that differed from leases in material respects. They were in effect a sale of the sand in place, with the privilege to the purchaser to enter on the premises and remove the sand. The work done by the contractor, under such an agreement, was as much done by the owner as if performed by his agent. If the owner had employed an agent or a contractor to excavate and load the sand on cars for him, paying a reward for the service, and retaining title to the sand, it is clear the acts of the contractor in excavating and loading the sand would be the owner's acts, as much so as if done in person. Such acts, if continued for the requisite length of time and with the necessary continuity, and under color of title and adverse claim of right, would ripen the possessor's claim into legal title and ownership of the land described in his color of title. The fact that the contractor purchases and pays for the sand in place and excavates and loads it at his own expense does not change the character of his possession. In entering upon the premises to remove the sand, he acts as the licensee of the owner, and his possession is as much that of the owner as if the owner had assumed the duty of removing it himself. The contract gives the purchaser no exclusive possession of any part of the premises, as against the owner. The license to enter is confined to the purpose for which it was granted, i. e., to remove the sand. For no other purpose can the contractor enter or claim possession of the premises as against the owner. Under a lease, the tenant can exclude the landlord from possession of the leased premises during the term, unless his right to enter is reserved. So that in such a case, unless the landlord has possession through the possession of his tenant, he cannot have it at all. In this case, however, the owner never surrenders possession of the premises to his contractor, but, at most, permits him to enter upon them for the single purpose of taking away the purchased sand. For all other purposes the possession of the premises is as it was before the contract was entered into. The relation between the owner and the contractor is more nearly that of principal and agent than that of landlord and tenant. The acts done by the contractor are therefore done by the owner through procuration. The contract provides merely that the owner "agrees to sell to second party (the purchaser) sand out of said pit 'F,' * * * and said sand shall be mined and loaded at the expense of the second party." It also provides that the purchaser shall have exclusive right to haul sand from the pit, "with the exception that the Kirby Lumber Company has the concurrent right to haul all the sand from said pit which may be desired by said Kirby Lumber Company for its own use," and also that the purchaser shall load and ship sand for the Kirby Lumber Company at certain prices therein fixed. It is clear that the contract did not effect the surrender of the possession of the premises to the contractor, and was in no sense a lease, but so far as it authorized

213 F.—10

the entry by the contractor was a mere license, under which the contractor was no more than the agent of the owner, and his acts of possession consequently were those of the owner himself.

If the contract should be considered a lease of the premises from which the sand was to be removed, there is no specification of the part leased by metes and bounds or other description. The language is:

"First party hereby agrees to sell to second party sand out of said pit F at $2.25 for each coal car and $1.25 for each flat car; and said sand shall be removed and loaded at the expense of second party."

The evidence shows there was never but one sand pit on the tract of land. If the contract be construed to put the contractor in possession, it does not attempt to restrict this possession either by metes and bounds or in any other way than by designation of the pit where alone the sand was to be obtained. It would have been as futile to have leased the contractor land on which there was no sand, as for an agricultural lease to include wild and unimproved land. The purpose was to vest the contractor with such possession as would enable him to get out the sand, and that possession was of the land where the sand was located, which happened to be at pit "F" and not elsewhere. The contractor had the right to follow the sand to wherever upon the land the vein carried him. His possession was restricted only by the purpose for which he was granted it, viz., the removal of the sand. He could only occupy the land for that purpose, but could occupy all of it if shown to be necessary for that purpose. The contract contains no territorial restriction upon the contractor, by metes and bounds, or otherwise, but only the restriction implied from its purpose. This brings this case within the principle of the cases, like that of Bowles v. Brice, where the improved lands of a large tract were leased for cultivation, and the landlord held to be in possession of the entire tract through the partial possession of his tenant; rather than that of the cases of Read v. Allen and Craig v. Cartwright, in which the limitation on the tenant's possession was by specific boundaries, and the landlord held to have no more extensive possession than his tenant.

If the possession of the Texas Builders' Supply Company by occupancy of houses and removal of sand was of a kind that would enure to the defendant the Houston Oil Company, and extend its constructive possession to the boundaries of its color of title, then it was for the jury to say whether the defendants had established their plea of the five years' statute of limitations, and the court below erred in directing a verdict for the plaintiffs and interveners.

The cause is reversed and remanded to the District Court for a new trial in conformity herewith.

### On Rehearing.

PER CURIAM. The petition for rehearing has been duly considered, and the same is denied.

SHELBY, Circuit Judge (dissenting). I did not concur in the opinion or judgment in this case, though my dissent was not entered

on the record. I wish now to have it noted on the record that I am of the opinion that the judgment of the District Court should have been affirmed.