COOK et al. v. EASTERLING et al.*
(No. 1079.)

(Court of Civil Appeals of Texas. Beaumont.
March 15, 1924. Rehearing Denied
March 26, 1924.)

1. Adverse possession ⬤➡102—Possession of tenant held to interrupt running of statute against landlord except as to part in actual adverse possession of claimants.

Where a contract of tenancy gave tenant the right to purchase and remove sand from a sand pit on an entire tract of land belonging to lessor, and there was no specification of the part leased by metes and bounds and only one sand pit on the tract, tenant's holding under the contract was not restricted and gave the landlord constructive possession of all of the tract not in actual possession of claimants by adverse possession, thereby restricting claimants under their limitation claim to their actual enclosures.

2. Adverse possession ⬤➡102—Entry by agent held to have same effect as entry by tenant in stopping running of limitations against principal.

As affecting a claim of land under 10-year limitations, entry of agent or licensee of the record owner on the land, under a contract by which it was to have the right to remove sand from a sand pit, *held* to have the same effect as an entry by tenant and to interrupt the running of the statute against the owner except as to part in actual possession of the claimants.

Appeal from District Court, Hardin County; J. M. Combs, Judge.

Trespass to try title by E. E. Easterling and others against J. H. Cook and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Jas. A. Harrison and C. W. Howth, both of Beaumont, for appellants.
Thos. J. Baten, E. E. Easterling, and W. D. Gordon, all of Beaumont, for appellees.

WALKER, J. This was a suit in trespass to try title against appellants by appellees, and involved 160 acres of land on the Felder league in Hardin county, Tex. Appellants answered claiming the land under the ten-year statute of limitation. On conclusion of the evidence, a peremptory instruction in favor of appellees was given to the jury. It was admitted that appellees owned the record title to 2,578 acres of this league, which they held under the Houston Oil Company of Texas, and that they "deraigned their record title to the land" under the Houston Oil Company. The 160 acres in controversy was a part of the 2,578 acres.

[1] We agree with appellants that their use and occupancy of the 160 acres in controversy from 1902 until 1913 was sufficient to raise an issue of limitation in their favor, and that the court erred in instructing a verdict in favor of appellees unless the use and occupancy of the 2,578 acres by the Houston Oil Company during the limitation period was sufficient to restrict appellants to their actual inclosures, which they do not specially claim in this suit. In 1902, the Houston Oil Company entered into the following contract with the Texas Builders' Supply Company:

"State of Texas, County of Harris.

"This contract this day made and entered into by and between the Houston Oil Company of Texas, a corporation duly organized and doing business under the laws of the state of Texas, hereinafter styled first party, and Texas Builders' Supply Company with headquarters at Beaumont in Jefferson county, Texas, hereinafter styled second party, witnesseth as follows, to wit:

"That whereas, first party is the owner of a certain sand pit at the station of Fletcher in Hardin county, Texas, on the line of the Gulf, Beaumont & Kansas City Railway Company, said pit being known as pit F, and is willing to sell sand out of said pit to second party, and second party is desirous of purchasing sand from said pit of first party, under the terms of this contract;

"Now therefore, the parties hereby agree between themselves as follows, to wit:

"1. First party hereby agrees to sell to second party sand out of said pit F at two and $25/100$ ($2.25) dollars for each coal car and one and $25/100$ ($1.25) dollars for each flat car; and said sand shall be mined and loaded at the expense of second party.

"2. Second party shall take and pay for at least fifty ($50.00) dollars worth of sand at the rates aforesaid for each month; and if during any month second party fails to load and haul as much as $50.00 worth of sand at the rates aforesaid, second party shall nevertheless pay first party the sum of $50.00 on the 5th day of the following month; but in that event second party shall have the right to load and haul out during any succeeding month enough sand to cover the shortage of any preceding month; and it further provided that second party shall have the right to purchase, load and haul out from said sand pit F as much sand as they may desire during the life of this contract; and any excess above $50.00 worth at the rates aforesaid which second party may load and haul during any month, shall be paid for not later than the 5th day of the next following month at the rates aforesaid.

"3. It is understood that during the life of this contract second party shall have the exclusive right to load and haul sand out of the said pit F with the exception that the Kirby Lumber Company has the concurrent right to haul all the sand from said pit F which may be desired by said Kirby Lumber Company for its own use; and the second party hereby agrees that it will load and ship for the Kirby Lumber Company all sand it may desire for its own use from said pit F during the life of this contract and charge the Kirby Lumber Company therefor for loading and superintendency not exceeding $4.00 per coal car and $2.00 per flat car, or including cost of sand $6.25 per coal car, and $3.25 per flat car.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"4. It is hereby expressly agreed that either party hereto may terminate this contract at any time by giving the other party thirty days' written notice.

"In testimony whereof, witness the hands of the parties hereto in duplicate originals this the 16th·day of October, A. D. 1902.

"Houston Oil Company of Texas,
"Per F. A. Helbig, Asst. Secy.
"Texas Builders' Supply Company,
"Per M. F. Parker, Pres."

In their brief, appellants concede that the Texas Builders' Supply Company "were taking sand from sand pit F during the period defendants claim to have acquired title to the 160 acres in controversy by limitation." They further say:

"The lower court was under the impression that, if the true owner of the land placed a tenant in possession of any portion thereof, even under a restricted tenancy, such restricted tenancy would stop the running of limitation in favor of defendants, except as to the land actually inclosed and received by defendants, * * * and if the theory of the court is correct, then the charge of the court directing a verdict for the plaintiffs was proper."

We agree with appellants that a tenant holding under the Houston Oil Company "under a restricted tenancy contract would not restrict them to their actual enclosures"; but the record does not show that the trial court instructed the verdict on the proposition advanced·by appellants, but the verdict was instructed on appellees' evidence, which, in the judgment of the trial court, was sufficient to show a constructive possession by the Houston Oil Company of all of the 2,578 acres in the actual possession of the limitation claimants. In connection with working sand pit F, the Texas Builders' Supply Company used and occupied by its laborers two small houses adjacent to the pit.

This identical contract was in issue before the Circuit Court of Appeals sitting at New Orleans in Houston Oil Co. v. Goodrich, 213 Fed. 136, 129 C. C. A. 488. The construction given the contract by that court, in which we concur, is decisive of this appeal, and is as follows:

"The principle is a general one and is well established in Texas that actual possession of a small part of a tract by one who claims, under color of title, evidenced by registered deeds, a large tract, extends his possession to the boundaries described in his color of title, in the absence of actual adverse possession of any part of the tract by another. Ellicott v. Pearl, 10 Pet. 412, 9 L. Ed. 475; Hunnicut v. Peyton, 102 U. S. 333, 26 L. Ed. 113; Smith v. Gale, 144 U. S. 509, 12 Sup. Ct. 674, 36 L. Ed. 521; Scaife v. North Carolina Land Co., 90 Fed. 238, 33 C. C. A. 47; Evitts v. Roth, 61 Tex. 81.

"Nor is it necessary to the application of this principle that the part occupied should have borne any considerable proportion to the entire tract, or that it should be inclosed under fence, or dwelt upon by the occupant. It is sufficient if it be used and enjoyed in a way consistent with the character and utility of the land. So it has been held that the continued removal.of sand from an otherwise useless vacant lot is an act of possession of the land that may ripen into title and as well the use of a tract of land for the deposit of stone, the removal of timber from it, cultivation without occupancy or inclosure, and many other like acts, when done with color of title and accompanied by the payment of taxes. Ellicott v. Pearl, 10 Pet. 411, 9 L. ·Ed. 475; Ewing v. Burnet, 11 Pet. 41, 9 L. Ed. 624; Holtzman v. Douglas, 168 U. S. 278, 18 Sup. Ct. 65, 42 L. Ed. 466; Small v. McMurphy, 11 Tex. Civ. App. 409, 32 S. W. 788; El Paso v. Ft. Dearborn National Bank, 96 Tex. 496, 74 S. W. 21.

"So it seems quite clear, if the defendant the Houston Oil Company had removed the sand that the evidence shows was removed by its contractor, the Texas Builders' Supply Company, during the period from 1902 to 1911, this, in connection with the contemporaneous occupancy of the houses by its employés, and the payment by it of annual taxes on the entire tract, would have constituted an adverse possession on its part that would have been extended by its color of title to the entire tract of 2,578 acres, and given it title thereto by the statute of limitations of five years. Does the fact that the sand was removed by a third party under a contract with the owner or claimant change the conclusion? It is contended that it does because, by the terms of the contracts between the Houston Oil Company and the Texas Builders' Supply Company under which the sand was removed, the right of the contractor to remove it was impliedly limited to one specific portion of the tract, and the possession of the owner or claimant, through its contractor, was likewise limited to the same portion. The contention is based upon the principle that, when an adverse claimant, holding under color of title, leases a portion of the tract adversely claimed by him to a tenant, the lease restricting the possession of the tenant to the lesser tract, described by metes and bounds, the adverse possession of the landlord, by virtue of his tenant's possession. extends only to·the tract described in the lease by metes and bounds, and not to his entire tract described in his color of title.

"In the case of Ellicott v. Pearl, 10 Pet. 411–443 (9 L. Ed. 475), Justice Story said:

"'In Jones v. Chiles, 2 Dana (Ky.) 28, it was held by the court that, if a landlord settles a tenant without bounds upon a tract of land, he is in possession to the limits of the claim. But if the tenant is restricted by metes and bounds, to a part only of the land, the landlord's possession is in like manner limited.'

"In the cases of Read v. Allen, 63 Tex. 158, and Craig v. Cartwright, 65 Tex. 424, the principle is laid down that:

"'Where one holding·a deed to land described by metes and bounds leases a part of it to a · tenant by specific metes and bounds, the possession of the tenant is only coextensive with the bounds' specified in the lease, and not with the whole tract.'

"In the case of Bowles v. Brice, 66 Tex. 730, 2 S. W. 733, the court said:

"'The question is: Must the possession in this case be restricted to the portion of the premises actually occupied by the tenants? It is held in Read v. Allen, 63 Tex. 154, and in

Texas Land Co. v. Williams, 51 Tex. 61, that when a party claiming land leases by written contracts specific parts of it, describing them by metes and bounds, his possession through his lessees extends only to the parcels so defined. * * * But we consider that we have a different case before us. Shall a party who lets to tenants, for the purpose of cultivating the improved part of a tract of land, be deemed to have lost his constructive possession of the portion which is unimproved? We think not. He applies the property to the only use of which it is susceptible, and should be deemed as exercising ownership over the whole tract as fully as if he were in possession of the improved portion, cultivating it himself. It is true that the witnesses state that the tenants in this case had no right or authority over the land not in cultivation. This is ordinarily the case in the farming out of agricultural lands. A tenant, who leases of one claiming a house and lot in a city a room in such house, does not usually have any dominion over other parts of the property, though unoccupied. Yet is it to be held that the landlord's possession is restricted to the room so leased? This question must be answered in the negative. No arbitrary rule can be laid down in this class of cases; and we conclude that, in a case like the one present, the possession of the landlord should be construed to be coextensive with the boundaries of his deed.'

"In the case of Haynes v. T. & N. O. R. R. Co., 51 Tex. Civ. App. 53, 111 S. W. 429, the Court of Civil Appeals of Galveston said:

"'It was held by the Supreme Court, in Read v. Allen, 63 Tex. 158, that, "where one holding a deed to land described by metes and bounds leases a part of it to a tenant by specific metes and bounds, the possession of the tenant is only coextensive with the bounds specified in the lease, and not with the whole tract," and the same rule is also announced in Craig v. Cartwright, 65 Tex. 424. The later case of Bowles v. Brice, 66 Tex. 730 (2 S. W. 729), while not in terms overruling the former opinions in the cases referred to, seems to us to hold directly to the contrary. We gather from the statement of the facts in the latter case that the only possession of the land held by the owner was through tenants to whom had been rented the improved and cultivated land, only a part of the whole tract, and that these tenants had no right or authority over the land not in cultivation. We can see no difference between the facts of that case and this. We understand the court to hold in that case that in such case the constructive possession of the owner, by virtue of this actual possession of the tenant, extends to the limits of the entire tract, and was not limited to the boundaries of the portion leased to the tenants.'

"The cases quoted from show that, where the principle relied upon obtains, its scope is restricted to cases in which the tenant is restricted by the description of the premises leased to a specific part of the tract, described by metes and bounds. The Supreme Court of the United States, in the case of Ellicott v. Pearl, 10 Pet. 411, 9 L. Ed. 475, quote approvingly from the case of Jones v. Chiles, 2 Dana (Ky.) 28, the principle that 'if a landlord settles a tenant, without bounds, upon a tract of land, he is in possession to the limits of the claim,' and that the landlord's possession is limited to the part occupied by the tenant, only, 'if the tenant is restricted by metes and bounds, to a part only of the land.'

"The earlier Texas cases cited are reconcilable with the case of Bowles v. Brice, 66 Tex. 724, 2 S. W. 729, only upon the distinction that those were cases in which when a party 'claiming land, leases by written contract specific parts of it, describing them by metes and bounds, his possession through his lessees extends only to the parcels so defined.' In the Bowles v. Brice Case, the lease was of the improved parts of the land, without specific description, for the purpose of cultivation. The court, distinguishing that case from the two earlier ones, says:

"'But we consider that we have a different case before us. Shall a party who lets to tenants, for the purpose of cultivation, the improved part of a tract of land, be deemed to have lost his constructive possession of the portion which is unimproved? We think not. He applies the property to the only use of which it is susceptible, and should be deemed as exercising ownership over the whole tract as fully as if he were in possession of the improved portion, cultivating it himself.'

"The distinction is a narrow one, based possibly upon the idea that a description by metes and bounds in the lease is equivalent to an implied exclusion of the tenant from the part of the tract not so described in the lease; while a lease of the improved portions of a tract is the equivalent of a lease of the tract for the purpose of cultivation, the only parts useful to that end being the improved parts, and that such a lease implies no exclusion of the tenant from the remaining portions, not improved, and so the landlord's possession extends to the whole tract by virtue of his tenant's.

"The case of Houston Oil Co. v. Kimball, 103 Tex. 94–105, 122 S. W. 533, 124 S. W. 85, only holds that while the successor in possession of a part of a tract of one, who had recognized the title of a claimant, is estopped to deny his title, because of his privity with his predecessor in possession, yet, in order that the claimant may benefit by the possession of the occupant to the entire tract, it must appear that the occupant for himself or for the claimant claimed or exercised possession over the entire tract.

"Whether a tenant occupying a part only does claim and exercise possession to the limits of the tract, is to be determined by the facts of each case; and, as the Texas Supreme Court said in the case of Bowles v. Brice, supra, 'no arbitrary rule can be laid down in this class of cases.'

"The Texas Builders' Supply Company was in possession under contracts that differed from leases in material respects. They were in effect a sale of the sand in place, with the privilege to the purchaser to enter on the premises and remove the sand. The work done by the contractor, under such an agreement, was as much done by the owner as if performed by his agent. If the owner had employed an agent or a contractor to excavate and load the sand on cars for him, paying a reward for the service, and retaining title to the sand, it is clear the acts of the contractor in excavating and loading the sand would be the owner's acts, as much so as if done in person. Such acts,

if continued for the requisite length of time and with the necessary continuity, and under color of title and adverse claim of right, would ripen the possessor's claim into legal title and ownership of the land described in his color of title. The fact that the contractor purchases and pays for the sand in place and excavates and loads it at his own expense does not change the character of his possession. In entering upon the premises to remove the sand, he acts as the licensee of the owner, and his possession is as much that of the owner as if the owner had assumed the duty of removing it himself. The contract gives the purchaser no exclusive possession of any part of the premises, as against the owner. The license to enter is confined to the purpose for which it was granted, i. e., to remove the sand. For no other purpose can the contractor enter or claim possession of the premises as against the owner. Under a lease, the tenant can exclude the landlord from possession of the leased premises during the term, unless his right to enter is reserved. So that in such a case, unless the landlord has possession through the possession of his tenant, he cannot have it at all. In this case, however, the owner never surrenders possession of the premises to his contractor, but, at most, permits him to enter upon them for the single purpose of taking away the purchased sand. For all other purposes the possession of the premises is as it was before the contract was entered into. The relation between the owner and the contractor is more nearly that of principal and agent than that of landlord and tenant. The acts done by the contractor are therefore done by the owner through procuration. The contract provides merely that the owner 'agrees to sell to second party (the purchaser) sand out of said pit "F," * * * and said sand shall be mined and loaded at the expense of the second party.' It also provides that the purchaser shall have exclusive right to haul sand from the pit, 'with the exception that the Kirby Lumber Company has the concurrent right to haul all the sand from said pit which may be desired by said Kirby Lumber Company for its own use,' and also that the purchaser shall load and ship sand for the Kirby Lumber Company at certain prices therein fixed. It is clear that the contract did not effect the surrender of the possession of the premises to the contractor, and was in no sense a lease, but so far as it authorized the entry by the contractor was a mere license, under which the contractor was no more than the agent of the owner, and his acts of possession consequently were those of the owner himself.

"If the contract should be considered a lease of the premises from which the sand was to be removed there is no specification of the part leased by metes and bounds or other description. The language is:

"'First party hereby agrees to sell to second party sand out of said pit F at $2.25 for each coal car and $1.25 for each flat car; and said

sand shall be removed and loaded at the expense of second party.'

"The evidence shows there was never but one sand pit on the tract of land. If the contract be construed to put the contractor in possession, it does not attempt to restrict this possession either by metes and bounds or in any other way than by designation of the pit where alone the sand was to be obtained. It would have been as futile to have leased the contractor land on which there was no sand, as for an agricultural lease to include wild and unimproved land. The purpose was to vest the contractor with such possession as would enable him to get out the sand, and that possession was of the land where the sand was located, which happened to be at pit 'F' and not elsewhere. The contractor had the right to follow the sand to wherever upon the land the vein carried him. His possession was restricted only by the purpose for which he was granted it, viz., the removal of the sand. He could only occupy the land for that purpose, but could occupy all of it if shown to be necessary for that purpose. The contract contains no territorial restriction upon the contractor, by metes and bounds, or otherwise, but only the restriction implied from its purpose. This brings this case within the principle of the cases, like that of Bowles v. Brice, where the improved lands of a large tract were leased for cultivation, and the landlord held to be in possession of the entire tract through the partial possession of his tenant; rather than that of the cases of Read v. Allen and Craig v. Cartwright, in which the limitation on the tenant's possession was by specific boundaries, and the landlord held to have no more extensive possession than his tenant."

It thus appears that if the contract was a contract of tenancy, it was not of a restricted nature within the rule announced in Read v. Allen, 63 Tex. 158, but involved all of the 2,578 acres, under the rule announced in Bowles v. Brice, 66 Tex. 730, 2 S. W. 729. Therefore the holding of the Texas Builders' Supply Company, under the contract, gave the Houston Oil Company constructive possession of all of the 2,578 acres not in the actual possession of appellants, thereby restricting them under their limitation claim to their actual inclosures

[2] Again, if the Texas Builders' Supply Company, under the contract, was the agent or licensee of the Houston Oil Company, its holding and possession under the contract would be an entry by the Houston Oil Company and would have the same effect as an entry by tenant.

We believe the judgment was correctly instructed in favor of appellees.

HIGHTOWER, C. J., not sitting.